**In re G. W. C. FINANCIAL & INSURANCE SERVICES, INC., Debtor.**

**In re G. W. C. CREDIT SERVICES, INC., Debtor.**

**In re G. W. C. SERVICES, INC., Debtor.**

**In re CROMAN INVESTMENT CO., Debtor.**

**Bankruptcy Nos. 79–21769 PE to 79–21772 PE.**

United States Bankruptcy Court, C. D. California.

Jan. 2, 1981.

---

Elizabeth Y. Williams, Newport Beach, Cal., for debtors.

Robert H. Stopher, Santa Ana, Cal., Trustee.

Robinson, Wolas & Diamant, Los Angeles, Cal., for Creditors' Committee.

## MEMORANDUM OF DECISION

### RE ATTORNEY FEES

PETER M. ELLIOTT, Bankruptcy Judge.

These cases were commenced under Chapter 11 of the Bankruptcy Reform Act of 1978, on October 11, 1979. On the motion of creditors, and with consent of the debtors, an order for relief under Chapter 7 was entered on March 18, 1980.

The Trustee filed a motion to require the debtors' attorney, Elizabeth Williams, to return a portion of the fees paid to her because the fees were allegedly unreasonable and excessive. Ms. Williams received the following retainers for filing these Chapter 11 cases:

|  |  | % of total fees |
|---|---|---|
| Croman Investment Co. | $ 2,500. | 12.5% |
| G.W.C. Financial & Insurance Services | 7,500. | 37.5% |
| G.W.C. Services, Inc. | 7,500. | 37.5% |
| G.W.C. Credit Services, Inc. | 2,500. | 12.5% |
| Total | $20,000. |  |

■ A substantial body of case law concerning the reasonableness of fees paid attorneys for debtors was built up under the former Bankruptcy Act. Except for the rule of fixing fees on the lower end of the spectrum of reasonableness which, in turn, was dictated by an overall policy of economy of administration, the new Code is substantially the same as the old Act. 11 U.S.C. § 329 covers the same ground as § 60(d) of the old Act (authority of the court over fees paid or agreed to be paid in contemplation of filing bankruptcy). 11 U.S.C. § 330 equates to § 64(a)(1) of the old Act (expense of administration priority for debtor's attorney fees earned after bankruptcy is filed). A major change is that under the new Code, the fees of counsel for the debtor are to be valued in part by taking into account the cost of comparable services, other than in a case under the Code.

■ At the outset, I advised counsel that I deemed the ruling in *In re Casco Fashions*, C.A.2d (1973) 490 F.2d 1197 to be viable. That is, counsel is entitled to retain, under 11 U.S.C. § 329, only so much of her retainer as would be reasonable compensation for services performed before the actual filing of the cases. However, Ms. Williams followed my suggestion and the procedure approved in *Casco Fashions*, of filing an application for fees under 11 U.S.C. § 330 by way of setoff of the Trustee's demand for return of fees. This approach requires me to consider the status of the administration because I should not allow fees under § 330 without assurance that there are sufficient funds to meet all claims entitled to equal priority under § 330.

The latest report filed by the Trustee shows the cash position of the estates to be as follows:

|  | Balance on Hand |
|---|---|
| G.W.C. Financial & Insurance Services | $14,309.09 |
| G.W.C. Credit Services, Inc. | 15,290.00 |
| G.W.C. Services, Inc. | 63,383.00 |
| Croman Investment Co. | 751.00 |

Counsel made no attempt to apportion her time as to individual cases. As an attorney holding herself out as a specialist in bankruptcy, Ms. Williams knows that,

Many decisions recognize that the keeping of accurate time records by attorneys in bankruptcy proceedings is indispensable.

*Cle-Ware Industries, Inc. v. Sokolsky*, (1974 C.A. 6th) 493 F.2d 863, 877.

To put it charitably, Ms. Williams' time records are not very reliable. She does not enter the time when she commences a service for a client or when she completes that service, or the elapsed time. Her general practice was, at the end of the day, to multiply her estimate of elapsed time by her hourly rate of $150 in her head, and enter the dollar amount directly. Also, she would not do this every day, but would occasionally recreate time in her head for several days at a time and post it to a client's account. For example, on September 28, 1979, she shows "research—new Chapter 11 for client $2,000." After the Trustee filed his motion to have her fees examined, and at the request of the court, she went back and produced time records by the device of dividing the dollar fee charged by her hourly rate and coming up with the hours allegedly spent. Therefore, the $2,000 charge on September 28, 1979 translates into 13.3 hours. She now recalls that this time was not spent on September 28, but was probably accrued over a period of three, four or five days.

I practiced law for 15 years, and attempted to maintain reasonably accurate time records. I have always been interested in law office management, and I am familiar with methods used by other attorneys and the difficulties of keeping accurate time records in view of the many interruptions in attorneys' busy schedules. I have not met an attorney who has been able to show billable time of more than four or five hours per day in a busy law office. It is almost beyond my comprehension that any attorney has such total recall that they can anywhere near estimate their time billable to any particular client at the end of a day or at the end of a period of several days.

## SERVICES PERFORMED

The Trustee contends that much of counsel's time was not productive and not necessary.

█ Reasonable compensation is not necessarily gauged by the legal services actually rendered. It is rather to be measured by the legal services that are reasonably necessary under circumstances of a case, *Cirimele v. Shinazy*, (1955) 134 Cal.App.2d 50, 285 P.2d 311.

In these cases, none of the debtors conducted any business operations after filing (October 11, 1979). Although an official creditors' committee was appointed on December 12, 1979, neither the debtors nor counsel for the debtors ever met with the committee to discuss a plan or for any other purpose. None of the debtors ever filed a plan. The principal officer of the debtors refused to testify, on Fifth Amendment grounds, at the January 8, 1980 creditors' meeting held under 11 U.S.C. § 341. An indication that the affairs of the debtors were further clouded is the fact that the debtors paid $5,000 to attorney Thomas Russell, in October 1979, in connection with pending criminal charges against the debtors (response of Russell filed May 9, 1980).

Ms. Williams knew that on October 9, 1979, two days before filing, Gary Croman, as President of G.W.C. Services, Inc., sold and transferred all of the debtor's office furniture to Gary Croman personally for $13,500 with no money down, payable over a 36 month period, with no interest. At the same time, Mr. Croman, as President of the debtor G.W.C. Services, Inc., sold a 1976 Cadillac automobile to himself personally for $4,250, payable nothing down, in 36 monthly installments with no interest. On the same date, as President of G.W.C. Services, Inc., he sold and transferred a 1976 Honda Accord automobile for $3,000, payable over a 30 month period at $100 per month, with no interest, to G.W.C. Fashions, Inc. (a corporation owned by his wife, Diane B. Croman). I take judicial notice that the Kelly Blue Book value on the 1976 Honda Accord in October of 1979 was $3,525 wholesale and $4,630 retail.

Although counsel was apparently not bothered by transfers that might well be considered fraudulent conveyances she certainly should have known that these transfers would not exactly endear Mr. Croman to the creditor body. In addition, she acknowledges that these debtors could not have been expected to continue operation of their businesses without office furniture.

11 U.S.C. § 330(a)(1) provides, in part, as follows:

(a) ... the court may award ... to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such ... attorney, ... based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title;

I recognize that hindsight is 20/20, but I find it difficult to believe, given the history of these cases, that they were originally filed with any reasonable prospects or even thoughts of formulating a plan. Instead, the services seem to have been directed primarily at staving off the inevitable orders for relief under Chapter 7. Compare the services rendered in *In re Casco Fashions, Inc., supra*, at Page 1198. See also Page 1204 where the court opined,

To be sure, if a court finds that a Chapter XI proceeding was filed without any reasonable prospects for success or in an effort to head off an inevitable adjudication of bankruptcy, compensation to a debtor's attorney should be denied.

█ The new Code should be construed in a manner not to discourage competent counsel from representing financially distressed debtors. At the same time, it should not be taken to encourage counsel to file a Chapter 11 case with only a vague hope that something might turn up in the future by way of a plan, and then try to justify a large retainer by largely unproductive services.     .

## COST OF COMPARABLE SERVICES

█ I have already commented at length on the time, the nature, the extent and the

value of services rendered. Counsel argues at some length in her points and authorities filed August 1, 1980 concerning the effect of the standard of cost of comparable services in § 330(a)(1), specifically, "the cost of comparable services other than in a case under this title", as a factor in the equation of fixing reasonable compensation. The legislative history shows this test was inserted to change existing case law, under the Act, which gave considerable weight to conservation of the estate for creditors and economy of administration.

William Tiernan, a well-qualified bankruptcy and insolvency specialist was called by Ms. Williams as an expert. He had surveyed the major bankruptcy firms in Los Angeles and also in Orange County. He also surveyed four prominent Orange County firms with a strong emphasis on business practice. The results will not necessarily please the bankruptcy specialists, in that, generally, the business firms charged lower rates than did the bankruptcy firms. Therefore, although the "cost of comparable services" protects counsel from being awarded inadequate fees, it also acts as a damper on fees at the higher hourly rates.

Ms. Williams billed her time in these cases at $150. per hour, a rate on a par with or higher than the rate of senior partners in experienced and competent bankruptcy firms in Orange County and experienced, competent business law firms in Orange County.

It is interesting to note that Mr. Tiernan, with 30 years of experience as an insolvency and bankruptcy attorney, only charged his time at $125. per hour in these cases.

■ I am in agreement with the following observations of the court in *In re First Colonial Corp. of America*, C.A. 5th 1977, 544 F.2d 1291, at page 1300,

> Because judges are familiar with the fees charged by the legal profession and experienced in gauging the quality of legal work, no expert opinion evidence is required on the issue, though such evidence may be accepted.

And at 1301,

> ... the determination of what constitutes reasonable compensation for services furnished by an attorney in a bankruptcy proceeding can be a distasteful task. But this possibility does not excuse bankruptcy judges and district courts from conducting the thorough investigation that is necessary if they are to make their determination properly.

Ms. Williams graduated from Loyola Law School in 1971 and was admitted to practice in June of 1972. Until January of 1973 she was employed by a firm engaged primarily in domestic relations work. For the next two years she was employed by AVCO Financial Services as house counsel. Since January of 1975 she has been an office associate of William Tiernan. At the time these cases were commenced, October 11, 1979, she had been associated with a bankruptcy and insolvency attorney (Tiernan) for less than five years.

William Tiernan has a well deserved reputation as an insolvency and bankruptcy specialist. As a result, he attracts more business than he cares to handle and Ms. Williams has benefited from the business he has referred to her. In addition, by dint of diligent public relations work, she has persuaded attorneys, not familiar with bankruptcy, that she excels in that field. She considers herself to be a well qualified specialist in bankruptcy law and practice, a view not shared by the bankruptcy judges and bankruptcy bar in this District.

At best, Ms. Williams is on a par with an experienced associate of one of the major bankruptcy firms, or business firms. I judge her time to be worth, on a cost of comparable services basis, not over $95.00 per hour.

## CONCLUSION

■ Mr. Tiernan's time is included in Ms. Williams' time records submitted as justifying the fee charged. However, Mr. Tiernan did not receive any portion of the retainers totalling $20,000. He did receive and retain $500 from Attorney Schwary for an initial conference concerning these cases. At the time of his testimony, Mr. Tiernan

waived any right to compensation in these cases. Therefore, I will disregard his time which is logged on Ms. Williams' time records as 6.4 hours up to and including October 11, 1979 and 20.5 hours post October 11, 1979.

Giving face value to Ms. Williams' time records, up to the time of filing she shows 39 hours. At $95.00 per hour, the fee would be $3,705.

In addition, counsel is entitled to credit for the filing fees, $200. each case, for a total of $800. Her other claimed expenses for photocopying, postage, service fees and telephone are undocumented and will not be allowed.

The Trustee is entitled to an order, under 11 U.S.C. § 329, requiring Ms. Williams to return the excessive amount of the fee, $15,495 less a setoff for the amount to be allowed under 11 U.S.C. § 330.

Post filing, Ms. Williams shows a total of 85 hours. At $95.00 per hour, that would total $8,075. To that figure, should be added the time of Richard Barnett charged for at $65.00 to $75.00 per hour for a total of $903.

However, because of the unreliability of her time records and unproductive and unnecessary services included, I will allow, by way of setoff, only $5,000, as an expense of administration under 11 U.S.C. § 330.

Therefore, the Trustee is entitled to recover $10,495 from Ms. Williams. Counsel for the Trustee is to prepare an appropriate order or judgment.

The Trustee's application to recover fees from Thomas Russell has not been heard. Unless the Trustee has decided not to pursue that matter further, he should obtain a date for hearing and give notice to Russell's attorney, Robert Fisher.