**In the matter of David J. OLEN,
Debtor.**

**Bankruptcy No. 80–06971–B.**

United States Bankruptcy Court,
E. D. Michigan.

Nov. 25, 1981.

August, Thompson, Sherr, Clarke & Schafer, P. C. by Irving A. August, Birmingham, Mich., for debtor.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

On December 3, 1980, Dr. David J. Olen, a psychiatrist, filed a petition in bankruptcy. The debtor was hopelessly insolvent. The schedules list tax claims of $160,000.00; secured indebtedness of $168,000.00 and unsecured debt of $329,000.00, and assets of approximately $10,000.00, all of which were claimed as exempt. The debtor's attorney filed a disclosure statement indicating that he received a fee of $2,500.00 from the debtor for the services rendered in connection with filing the petition.[1] The court on its own motion, pursuant to section 329(b) of the Bankruptcy Code, scheduled a hearing to determine the reasonableness of this prepetition fee.

Section 329(b), derived from section 60(d) of the Bankruptcy Act[2] and Bankruptcy

---

1. This disclosure was made pursuant to section 329(a), which requires an attorney to file with the court a statement of the compensation paid or agreed to be paid for services rendered or to be rendered in contemplation of filing a bankruptcy proceeding.

2. Section 60(d) of the Bankruptcy Act provides as follows:

"If a debtor shall, directly or indirectly, in contemplation of the filing of a petition by or against him, pay money or transfer property to an attorney at law, for services rendered

Rule 220(a),[3] provides that the court may examine into the reasonableness of compensation paid by a debtor to an attorney for services rendered or to be rendered in contemplation of filing a bankruptcy proceeding and may order the return of any part of that payment to the extent it is excessive. "It matters very little to a bankrupt whether his attorney fee is large or small, since it will be paid out of the assets which, in any event, would normally be consumed in distribution." Committee on the Judiciary, House of Representatives, Report on H.R. 2833 (An Act to Amend Subdivision d of Section 60 of the Bankruptcy Act), *H.R. Rep.No.* 88–99, 88th Cong., 1st Sess., *reprinted in U.S.Code Cong. and Admin.News* 88th Cong., 1st Sess. 637, 638 (1963). In this context, the need for judicial scrutiny of legal fees paid to an attorney for a debtor contemplating bankruptcy, becomes self-evident. *Conrad v. Pender*, 289 U.S. 472, 53 S.Ct. 703, 77 L.Ed. 1327 (2nd Cir. 1933); *In re Wood and Henderson*, 210 U.S. 246, 28 S.Ct. 621, 52 L.Ed. 1046 (8th Cir. 1908); *In re Louisiana Loan and Thrift Corporation*, 416 F.2d 898 (5th Cir. 1969); *In re Buchanan*, 66 F.2d 416 (2nd Cir. 1933); *cert. denied Mackey v. Irving Trust Co.*, 290 U.S. 682, 54 S.Ct. 120, 78 L.Ed. 588 (1933), *In re David Bell Scarves, Inc.*, 61 F.2d 771 (2nd Cir. 1931); *In re Klein-Moffett Co.*, 27 F.2d 444 (4th Cir. 1928); *In re Stolp, et al.*, 199 F. 488 (7th Cir. 1912); *In re Cybern Education, Inc.*, 378 F.Supp. 835 (N.D.Ill.1974); *In the Matter of Knickerbocker Leather & Novelty Co., Inc.*, 158 F.Supp. 236 (S.D.N.Y.1958); *In the Matter of Alexis J. Guy*, 2 B.C.D. 1474 (Minn.1976).

The only question, therefore, is whether the services rendered by counsel

justify the compensation exacted. An attorney for the debtor is entitled to compensation for analyzing the debtor's financial condition; rendering advice and assistance to the debtor in determining whether to file a petition in bankruptcy; the actual preparation and filing of the petition, schedules of assets and liabilities, and the statement of affairs; and representing the debtor at the Section 341 meeting of creditors. *In re Kross*, 96 F. 816 (S.D.N.Y.1899). However, there is a consensus of opinion "that the work involved is often largely clerical or more in the nature of an accountant's work and warrants but a small fee for covering the true professional services." 3A Collier on Bankr., ¶ 62.31, at p. 1604 (14th ed. 1975). Allowable compensation for such services normally range from between $350.00 and $450.00.[4] *In re Hill*, 5 B.R. 541, 6 B.C.D. 917 (S.D.Calif.1980); *In re St. Pierre*, 4 B.R. 184, 6 B.C.D. 607 (D.R. I.1980); *In re Steeves*, 6 B.C.D. 215 (D.R.I. 1980). The performance of such service for a business entity may present additional problems requiring additional legal services and an attorney, therefore, in such cases may justifiably charge a greater fee. *Tidewater Services, Inc. v. Norfolk*, 2 B.C.D. 1236 (E.D.Va.1976); 3A Collier on Bankr., ¶ 62.31, at p. 1614 (14th ed. 1975). The compensation for whatever services are performed by the attorney is to be determined on a case-by-case basis.

The time record submitted by counsel to justify the reasonableness of the compensation received, states that he rendered 32½ hours of legal services in connection with the filing of the petition in bankruptcy. Seven and one-half hours were spent in routine telephone calls and correspondence;

or to be rendered, the transaction may be examined by the court on petition of the trustee or any creditor and shall be held valid only to the extent of a reasonable amount to be determined by the court, and the excess may be recovered by trustee for the benefit of the estate."

Section 60(d) permitted the court to re-examine the reasonableness of fees on its own motion in recognition that "lawyers are frequently reluctant to challenge the fees charged by their colleagues."

3. Bankruptcy Rule 220(a) provides as follows: "On motion by any party in interest or on the court's own initiative, the court may examine any payment of money or any transfer of property by the bankrupt, made directly or indirectly and in contemplation of the filing of a petition by or against him, to an attorney for services rendered or to be rendered."

4. Legal clinics in this district charge as low as $150.00 for such services.

2½ hours in meetings with the debtor, presumably to obtain the factual information required to prepare and file the bankruptcy petition; 3½ hours were scheduled for attending a section 341 meeting of creditors and a meeting with an attorney for creditors, and 20 hours were spent doing legal research.

Counsel contends that he is entitled to compensation in excess of the acceptable range of fees for filing a voluntary petition in bankruptcy because of the 20 hours he personally was required to devote to research prior to filing the petition in bankruptcy.

It is necessary, therefore, to consider what research was performed and to what extent, if any, it serves to justify the fee received. The research consisted of the following: 11 hours researching the question of whether alimony in gross awarded to the debtor's wife in a divorce judgment was dischargeable, and 9 hours researching section 206(d)(1) and (2) of the Employees Retirement Income Security Act (ERISA). When requested to submit memoranda encompassing his research, counsel stated that he did not prepare any memorandum with respect to the alimony issue and that he refused to submit the memorandum with respect to the ERISA research because of the attorney-client relationship. An attorney has the burden of proof to establish that any compensation which he has received is reasonable. *Woods v. City National Bank and Trust Co. of Chicago*, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941); *In re Urban American Development Co.*, 2 B.C.D. 474 (S.D.Iowa, 1976). The work product of an attorney should be available to the court to enable the court to value the services rendered. The failure to submit the requested memoranda constitutes sufficient ground for denying compensation for the time devoted to such services. *In re Meade Land & Development Co., Inc.*, 527 F.2d 280 (3rd Cir. 1975).

The time devoted to the stated research does not serve as a basis for justifying the prepetition compensation for an additional reason. In determining the reasonableness of compensation, the court must not only determine what services were performed, but that the services were necessary. § 330. A debtor files a voluntary chapter 7 petition primarily to obtain a discharge of his existing indebtedness. However, if a debtor is guilty of certain kinds of conduct, a trustee or a creditor may object to his discharge. § 727. Or, a creditor may, if grounds exist, institute an action to except his individual debt from discharge. § 523(a). An attorney who contemplates the filing of a petition in bankruptcy as a resolution for a debtor's financial problem must, of necessity, determine whether facts exist which may be the basis for any discharge or dischargeability actions against the debtor and must take into consideration the possibility that such actions may be instituted in determining whether or not a bankruptcy petition should be filed. However, counsel is not required to perform in-depth research with respect to every conceivable action that may arise after the filing of the petition. Although grounds for creditor postpetition actions may exist, counsel cannot predict whether a creditor will actually institute any such action, nor can he accurately evaluate the work necessary to resolve it. For this reason, cases have consistently held that the compensation paid by a debtor who contemplates filing a petition in bankruptcy covers payment only for services required to be rendered up to the filing of the petition in bankruptcy and for attending the section 341 meeting of creditors. *In re Knickerbocker Leather & Novelty Co., Inc.*, 158 F.Supp. 236 (S.D.N.Y.1958), *aff'd sub nom. Haar v. Oseland*, 265 F.2d 218 (2nd Cir. 1959); *In re Buchanan*, supra; *In re Falk*, 30 F.2d 607 (2nd Cir. 1929). Any other approach would, in effect, be a signal to attorneys that they could charge whatever the traffic would bear with impunity. Limiting prepetition payment to services rendered or to be rendered in connection with the filing of the petition and attendance of the first meeting of creditors removes the temptation by an attorney to load his time sheets with time devoted to the resolution

of postpetition problems that might conceivably arise but never materialize. The facts here demonstrate the justification for this approach. There has been no postpetition action instituted by any creditor or any party in interest against the debtor with respect to the debtor's retirement and pension fund. The in-depth ERISA research, therefore, served no purpose. The debtor's spouse did file a complaint to have the dischargeability status of her alimony debt determined. This action was set for trial and settled prior to the completion of the trial.

 Counsel is entitled to compensation for any post-petition services he performs for the debtor. Such services may be compensable from the estate. If compensable from the estate, counsel is required to file an application for compensation, and the value of such services is to be determined by the court after notice to creditors. *In re Knickerbocker Leather & Novelty Co., Inc.*, 158 F.Supp. 236 (S.D.N.Y.1958), *aff'd sub nom. Haar v. Oseland*, 265 F.2d 218 (2d Cir. 1959); *In re Buchanan*, 66 F.2d 416 (2d Cir. 1933); *In re Falk*, 30 F.2d 607 (2d Cir. 1929). If the estate does not have funds available for the payment of attorney fees, or, if the services performed are not compensable from the estate, the debtor is personally liable for the reasonable value of such services. *Conrad v. Pender*, 289 U.S. 472, 53 S.Ct. 703, 77 L.Ed. 1327 (1933); *Randolph v. Scruggs*, 190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165 (1903); *In re Orbit Liquor*, 439 F.2d 1351 (5th Cir. 1971); *Lewis v. Fitzgerald*, 295 F.2d 877 (10th Cir. 1961); *In re Rothman*, 85 F.2d 51 (2d Cir. 1936); *In re Dawson*, 446 F.Supp. 196 (E.D.Mo.1978); *In re Eastwood*, 239 F.Supp. 847 (D.Or. 1965); *In re Hogen*, 4 B.C.D. 156 (C.D.Cal. 1978); *In re Mann*, 4 B.C.D. 514 (S.D.Tex. 1978). *Cf. In re Gray*, 2 B.C.D. 52 (D.Me. 1975); *In re Spisak*, 2 B.C.D. 1592 (D.N.J. 1977). However, the question of whether the post-petition services are compensable from the estate or a charge for which the debtor is personally liable is not now before the court. The only issue in this proceeding relates to the reasonableness of the prepetition fee received by counsel for services rendered for filing the petition in bankruptcy.

 There was no in-depth research required with respect to the issue of dischargeability of alimony. A claim for alimony was not dischargeable under the Bankruptcy Act; and is not dischargeable under the Code. § 17(a)(6); § 523(a)(5). Whether an award in a judgment of divorce is alimony or property settlement does not necessarily depend upon the characterization of the award in that judgment. The determination of whether it is or is not alimony is a question of fact and, what constitutes alimony, maintenance or support, will be determined under the bankruptcy law and not state law. H.R. 95–595, at p. 364, U.S.Code Cong. & Admin.News 1978, p. 5787. It was necessary, therefore, for the purpose of filing the petition that counsel merely advise the debtor that his former spouse in all probability would institute an action to determine the dischargeability status of her alimony award and that if such an action was instituted and, if the court determined that it was alimony, it was not dischargeable. Counsel has never revealed the purpose of the ERISA research. In the absence of counsel's establishing the need for such research as a condition of filing the petition in bankruptcy, what has been said about the dischargeability research is also applicable to the ERISA research.

 For the purpose of this proceeding, counsel is entitled to compensation only for the minimal research required to advise the debtor whether or not to file the bankruptcy petition, the drafting and filing of the petition in bankruptcy and the attendance at the section 341 meeting of creditors. It is the opinion of this court that a reasonable fee for such services is $850. Accordingly, any compensation received in excess of $850 is to be turned over to the trustee.

In light of the conclusion reached, it is not necessary to decide what value, if any, to attribute to the research allegedly performed at this time. However, this comment is appropriate. The cost of legal serv-

ices has been of continuing concern for the Bench, the Bar and the public. In his State of the Judiciary address to the American Bar Association in 1980, Chief Justice Burger expressed alarm that legal fees were rising to such a degree that there was a risk that lawyers may be pricing themselves out of the market. See also, "ABA Action Commission Challenges Litigation Cost and Delay," 66 Am.Bar.Assn.Jour. 965 (August, 1980). Attorneys should be ever concerned with instituting office procedures to minimize the cost of legal services. This is particularly so in the field of bankruptcy. Counsel is the senior member of a law firm with an extensive bankruptcy practice. There is no ascertainable or justifiable reason why the basic research dealing with the alimony and ERISA issues could not have been performed by a paralegal or an associate. *In the Matter of Piedmont Development and Investment Corporation,* 3 B.C.D. 97 (N.D.Ga.1976).