In the Matter of Dale Leon SWARTOUT, aka Clancy's # 23, aka Clancy's Restaurant d.b.a. Swartout Enterprises, Inc., Debtors.

Bankruptcy No. 3–81–02790.

United States Bankruptcy Court, S. D. Ohio, W. D.

May 11, 1982.

John I. Brichacek, New Carlisle, Ohio, for debtor.

James R. Warren, Springfield, Ohio, Trustee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### PRELIMINARY PROCEDURE

This matter is before the Court upon the Trustee's "Motion" that the Court, pursuant to 11 U.S.C. § 329, determine the reasonable value of Debtor's attorney's services in the instant proceeding. The Court set the matter for hearing on 5 February 1982, at which time Debtor's attorney appeared for oral argument and, also, submitted a "Statement of Debtor's Attorney in Support of Fees Charged." The following decision is based upon the evidence adduced at the hearing, Debtor's attorney's statement, and the record. The Trustee's action is interpreted to seek a ruling on the reasonableness of the fee as it pertains to an administrative priority since the factual details have not been contested and no question of a voidable preference is asserted.

### FINDINGS OF FACT

Debtor's attorney duly filed a Compensation Statement on 5 October 1981, as required by 11 U.S.C. § 329(a). The Compensation Statement reported that, "the total compensation promised the undersigned by (Debtor) for the services rendered or to be rendered in connection with this case is $2,940.00; the only compensation which has been received from (Debtor) or any other person on said account is $0; the balance due thereon is $2,940.00. . . ."

The Trustee filed the instant Motion on 19 November 1981. The Motion recites that, at Debtor's 11 U.S.C. § 341 Meeting of Creditors, Debtor reported payment to Debtor's attorney of $2,940.00.

On 5 October 1982, Debtor's attorney filed a Statement in Support of Fees Charged, which reads in relevant part, as follows:

This bankruptcy is so entertwined [sic] with a divorce action that the two causes are almost inseparable.

To understand this one must give the Court a little history about the Debtor. The Debtor and his former spouse, Deborah, incorporated in October of 1980 under the name of Swartout Enterprises, Incorporated, for purposes of purchasing a Restaurant Franchise known as Clancy's Restaurant # 23 in Tipp City, Ohio.

Against advice of counsel, they co-signed personally and corporately on the franchise agreement and sublease agreement which obligated them for a 10 year lease on the real estate. Deborah ran the day-to-day operation of the restaurant and the Debtor kept the books and records. Deborah moved out of the parties' home in Bethel Township in Clark County in the early part of February, 1981, announcing she had a boyfriend and wanted a divorce. She took all the corporate records and accounts with her. At the time the restaurant was already in financial trouble. The Debtor contacted me at that time to discuss his financial difficulties. At that time, we began to discuss and plan to file a bankruptcy action as it appeared the Debtor was insolvent. We

began to negotiate with Deborah's attorney . . . about the bankruptcy. She insisted that the restaurant was her business and she wanted to continue to run it. Thereafter, the Debtor filed for divorce.

Because Deborah kept taking money out of the restaurant for her personal use and quit paying any of the incurred indebtedness, the business closed on July 7, 1981, because her suppliers quit giving her goods on credit.

This placed the Debtor in the position wherein the Court of Common Pleas in the divorce action could have conceivably ordered Mr. Swartout to pay all or a portion of the $274,800.00 indebtedness.

Had the Court so ordered the Debtor would have been in contempt of Court because of his insolvency. This placed the Debtor in a position that he could not file his Petition for bankruptcy until such time as debt settlement was ordered by the Court or agreed upon by the parties. Up until the date of the final divorce hearing, Deborah would not agree to be responsible for the restaurant indebtedness or agree to release the Debtor on any of the claims made because of the restaurant operation and lease. On the date of the final hearing Deborah agreed that the following language could be inserted into the divorce decree, "It is further ordered that should either party file petition for relief in bankruptcy, the other party shall have no claim against the filing party through the cause entitled herein or through any other cause or claim which may later accrue."

Because of this language it is quite evident that all negotiations were in contemplation and inherent in the gathering of information to file bankruptcy.

In the meantime, a number of the corporate creditors began to file suit, not only against the corporation, but against the Debtor personally. These court actions had to be staved off by filing answers, motions to dismiss and other actions to delay until the bankruptcy could be filed.

Also, because Deborah had not kept proper corporate records, there was a real possibility of other creditors piercing the corporate veil and obtaining judgment against the Debtor.

Therefore, the Debtor had to request through subpoena in the common pleas divorce action all the corporate records and examine all corporate indebtedness on two separate occasions in Dayton. This required lengthy meetings.

The Divorce Decree and the Petition in Bankruptcy were filed on the same date.

It took an immense amount of time with the Debtor to make sure that all the creditors of the corporation were listed since he was not in physical possession of the records of the corporate indebtedness. . . .

To date in excess of 59.7 hours have been spent on this case and probably an estimated additional 10 hours will be required not counting preparing and being at today's meeting.

I have attached a list of services performed and charges therefor up to date. Only 14.8 hours were allocated directly to the divorce; however, all fees are for the bankruptcy as divorce occupied a minimal amount of time. Our fees are set at $60.00 per hour, at a formal partnership meeting on November 1, 1980. Based upon that, Mr. Swartout's bill to date is $3,582.00.

Appended to the statement is an extensive itemization of all legal services provided by Debtor's attorney. The Court notes that the Statement of Facts is not contested by the Trustee.

## DECISION AND ORDER

■ This matter is before the Court for determination of the "reasonable value" of Debtor's attorney's services "rendered or to be rendered in contemplation of and in connection with the case." 11 U.S.C. § 329. The necessity of judicial scrutiny of fees charged to a debtor for legal counsel in a bankruptcy proceeding is codified for the purpose of safeguarding against the inherent potential for abuse of a debtor's situation, since "It matters very little to a bank-

rupt whether his attorney fee is large or small, since it will be paid out of the assets which, in any event, would normally be consumed in distribution." Committee on the Judiciary, House of Representatives, Report on H.R. 2833 (An Act to Amend Subdivision d of Section 60 of the Bankruptcy Act), H.R.Rep.No. 88–99, 88th Cong., 1st Sess., reprinted in U.S.Code Cong. and Admin. News, 88th Cong., 1st Sess. 637, 638 (1963), cited in *Matter of Olen*, 15 B.R. 750, 752 (Bkrtcy.E.D.Mich.1981), (see also extensive citation therein). In other words, the traditional elements of the bargaining process do not typically exist in the formation of contracts between debtors and their attorneys; and, therefore, the role of the Court as contemplated in 11 U.S.C. § 329 is to protect the interests of creditors of the estate by allowance of compensation alleged due an attorney only to the extent actually and reasonably compensable for the services provided.

█ Judicial determination under 11 U.S.C. § 329 is largely a factual inquiry made on a case-by-case basis. *Olen, supra,* at 752. As a general rule, the Court, as a member of the local bar and the bench, will decide matters such as hourly rates, the difficulty and complexity of the legal issues, the quality of the legal services, and amount of time appropriately billed for various legal tasks, without the necessity of expert testimony unless a particular element or elements have been placed at issue. *In Re First Colonial Corp. of America,* 544 F.2d 1291, 1300 (5th Cir. 1977), cited in *In Re G.W.C. Financial and Insurance Services, Inc.,* 8 B.R. 122, 126, 7 B.C.D. 109 (Bkrtcy.C.D.Cal.1981) The Court also notes that the burden of proof in all issues under 11 U.S.C. § 329 is on the attorney. *In Re Underground Utilities Const. Co., Inc.,* 13 B.R. 735 (Bkrtcy.S.D.Fla.1981).

## I .

█ The threshold question on the facts under 11 U.S.C. § 329(b) is whether the attorney's hourly rate and amount of time spent is reasonable. Relevant criteria include " . . . the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under (title 11 of the United States Code)." 11 U.S.C. § 330(a)(1). The Court considers, *inter alia,* the necessity of the work performed, *Matter of Olen, supra,* at 753; *In Re G.W.C. Financial and Insurance Services, Inc., supra,* at 125, the novelty or unusual difficulty presented by a particular legal issue, *In Re Underground Utilities Const. Co., Inc., supra,* at 737, the attorney's legal experience, *Id.,* and the failure or success in accomplishing desired results on the debtor's behalf. *Matter of J.J. Bradley & Co., Inc.,* 6 B.R. 529, 533, 539, 6 B.C.D. 909, 2 C.B.C.2d 1159 (Bkrtcy.E.D.N.Y.1980), citing *In Re Hoffman,* 173 F. 234, 235 (E.D.Wis. 1909).

█ In the instant matter, the Court is of the opinion that a $60.00 hourly rate, as claimed, for the services provided is entirely reasonable. Relevant criteria include the rates typically charged by the local bar and the attorney's years of experience. This hourly rate compares favorably to the average hourly rates for Ohio attorneys in the annual survey of the economics of the practice of law by Altman & Weil, Inc., Management Consultants for the Ohio State Bar Association.

█ It is the further finding of the Court that Debtor's attorney did not spend unreasonable amounts of time in rendering the legal services specified. Relevant criteria for this finding include the variety of related legal issues, specifically the need to coordinate the Debtor's divorce, corporate dealings, and personal debts; the difficulty in the assembly of Debtor's personal and business records resulting from an acrimonious divorce proceeding; and the need for extreme legal caution because of the potential for large liability in the event of professional misjudgment. Although pre-Petition services should be particularly scrutinized to avoid excessive billing under the guise of unrelated or unnecessary preparation in anticipation of speculated creditor tactics, *Matter of Olen, supra,* at 753, the facts at bar indicate that the instant pre-Petition services were reasonably calculated to meet Debtor's imminent and real needs.

## II

■ The next question before the Court is whether the services rendered were, "in contemplation of and in connection with the case." 11 U.S.C. § 329. In order for services to be "in contemplation" of bankruptcy, they should be influenced by, and a direct result of, the imminence of the Debtor's Petition filing. *Tripp v. Mitschrich*, 211 F. 424 (8th Cir. 1914); *Quinn v. Union Nat'l Bank*, 32 F.2d 762 (8th Cir. 1929), cited in *Collier on Bankruptcy*, 15th Ed., ¶ 329.03, n.2. The Court should further ascertain that the services provided bear more than a casual relationship to the bankruptcy proceeding.

■ In the instant case, Debtor's attorney contends that, although 14.8 hours are "directly allocated" to Debtor's divorce, the divorce and bankruptcy proceeding are almost "inseparable." This Court disagrees. Although a contemplated bankruptcy filing may alter legal tactics in a debtor's other involvements, legal services for matters unrelated to the ultimate bankruptcy proceeding should not be compensated as a priority expense if the services were not directly connected with the bankruptcy proceeding. In this case, the strategies used in Debtor's divorce proceeding were affected by the contemplated bankruptcy proceeding. The divorce proceeding itself, however, is separable, and not "connected with" the case at bar as contemplated in 11 U.S.C. § 329(a).

It is the opinion of the Court, however, that the pre-Petition legal services regarding Debtor's corporate affairs were provided in preparation for Debtor's Petition filing in this Court and were undertaken primarily for purposes of protecting Debtor's bankruptcy privileges, and preserving Debtor's estate.

The Court makes no findings in regard to Debtor's attorney's claim that Debtor's bankruptcy proceeding will require an additional 10 hours of legal services, since there is presently no application before the Court for these services.

## III

The final matter for resolution is the proper handling by this Court of a debtor's payments for pre-petition legal services which are *bona fide* though not "connected with" the bankruptcy proceeding for purposes of 11 U.S.C. § 329. Typically, as is the case at bar, these payments are for debt which is unsecured.

The initial question, is whether the debtor's payment was "transferred" prior to the debtor's petition filing. If the transfer was pre-petition, Court inquiry should be directed to 11 U.S.C. § 547 for determination whether such transfer was preferential for purposes of the Bankruptcy Code.

■ In the instant case, however, the transfer was post-petition, and Court inquiry should instead be directed to 11 U.S.C. § 549. In this regard the threshold question, most relevant in 11 U.S.C. Chapter 7 proceedings, is whether the debtor's payment to his attorney constituted "property of the estate." 11 U.S.C. §§ 541 and 549(a). If the debtor utilized funds not part of the bankruptcy estate to pay for the pre-petition legal services, then such post-petition payment, to the extent in excess of what would have been received as an unsecured claim, was merely a gratuitous transfer of a debtor's assets for payment of a debt which would otherwise have been dischargeable. 11 U.S.C. §§ 524(c), 727 and 1328. On the other hand, if such post-petition transfer was made from funds properly part of the bankruptcy estate, then the question is whether any portion of the transfer should be avoidable by the Trustee as a "post-petition transaction" under 11 U.S.C. § 549. There is no evidence or representation submitted that the funds were not derived from the bankruptcy estate; and no factual basis of any possibility of post-petition services. The practical test in this regard is whether the attorney received greater compensation than would have been received had his claim been paid as unsecured through the bankruptcy proceeding.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Debtor's attorney's request for compensation of serv-

ices to date as an administrative claim in the bankruptcy case be reduced by $888.00 for the time billed on non-bankruptcy related services. (14.8 hours times $60.00 per hour).

IT IS FURTHER ORDERED that Debtor's attorney is granted two weeks leave to file a proof of claim in the amount of $888.00 for unsecured pre-Petition debt, disallowed as a priority claim against the estate.

IT IS FURTHER ORDERED that the funds in the amount of $888.00 transferred to his attorney for services not properly chargeable to the bankruptcy be remitted to the Trustee as a part of Debtor's bankruptcy estate.