# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———

No. 00-6074EA

———

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Robert G. Zepecki, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Steven C.R. Brown, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Appellant, | * | Eastern District of Arkansas |
| | * | |
| v. | * | |
| | * | |
| James C. Luker, Trustee | * | |
| | * | |
| Appellee. | * | |

———

Submitted: December 18, 2000
Filed: February 12, 2001

———

Before KRESSEL, SCHERMER and DREHER, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

Steven C.R. Brown (the "Attorney") appeals the bankruptcy court[1] order requiring him to return to the estate the sum of $32,840.00 paid to him in attorneys' fees. We have jurisdiction over this appeal

———

[1]The Honorable James G. Mixon, Chief Judge, United States Bankruptcy Court for the Eastern District of Arkansas.

1

from the final order of the bankruptcy court. <u>See</u> 28 U.S.C. § 158(b).  For the reasons set forth below, we affirm.

ISSUE

The issues on appeal are whether: (1) the bankruptcy court improperly asserted jurisdiction to order disgorgement of the fees paid to the Attorney for services allegedly performed for the debtor, Robert G. Zepecki, (the "Debtor"); (2) the bankruptcy court abused its discretion by ordering the Attorney, pursuant to 11 U.S.C. sections 105 and 329 to disgorge $32,840 of the $40,000 in attorneys' fees he received within the few months prior to and following the filing of the petition; and (3) the disgorged fees should be returned to the estate as a matter of law.  We conclude that: (1) the bankruptcy court had jurisdiction to order disgorgement of the Attorney's fees; (2) the court did not abuse its discretion by ordering the Attorney to disgorge a portion of his fees; and (3) the conclusion that the disgorged fees should be returned to the estate was appropriate as a matter of law.

BACKGROUND

On February 7, 1996, the Debtor filed for chapter 7 bankruptcy relief.  Two years later, the United States Bankruptcy Court for the Eastern District of Arkansas entered an order denying the Debtor's discharge because the Debtor knowingly and fraudulently gave false oaths in his bankruptcy case by failing to disclose a pre-petition transfer of a warranty deed to the Debtor's real property in Illinois to a third-party (the "Sale"), a pre-petition transfer of funds to the Attorney, and the existence of a bank account in the Debtor's name.  After the trial on the objection to the Debtor's discharge, the bankruptcy court ordered, pursuant to sections 105 and 329, that the Attorney appear before that court for a hearing to account for funds received from the Debtor (the "Hearing").

At the Hearing, the Attorney alleged that he represented the Debtor in the Sale.  The deed transferring the Illinois property to the third-party was recorded in Illinois.  According to the Debtor, he received a net sum of $102,989 from the Sale after paying closing costs and a secured indebtedness.  The Debtor claims that, within a few months of filing for bankruptcy relief,  he transferred the entire $102,987.17 to the Attorney as part of a tax-free exchange under Section 1031 of the Internal Revenue

2

Code.[2]  After the date on which the Debtor claims that the Attorney received the $102,987.17 but before the Debtor filed for bankruptcy relief, the Attorney submitted a bill to the Debtor and B&B  Diversified Resources, Inc. ("B&B"), the Debtor's corporation, for what the Attorney alleged to be an earned on receipt retainer in the amount of $40,000.  The bill stated that it was for past, present, and future services rendered for structuring a real estate exchange transaction under Section 1031 of the Internal Revenue Code, without a detailed listing of time expended.

The Attorney presented himself at the Hearing as a well-educated attorney with expertise in accounting and tax transactions.  He claimed that he represented B&B, not the Debtor, in the section 1031 tax-free exchange and that he received the $40,000 in attorney's fees from B&B.  Although the Debtor said that the Attorney represented B&B, the closing documents show that the Debtor conveyed title to the property to the buyer.  In addition, the Debtor executed the warranty deed.  The Subordinate Addendum to the 1031 Exchange of Property Escrow Agreement identifies the Debtor as a party to the transaction and in the Attorneys' fee statement, the Attorney identifies the Debtor as a party to that agreement.

During the year before the Debtor's bankruptcy filing in which the Attorney supposedly assisted B&B in the tax-free exchange, B&B's tax return showed a loss, not a capital gain, on the Sale.  B&B's stock became property of the Debtor's estate on the date of filing.  The Debtor's schedules show that his only major asset was the $102,989 transferred to the Attorney as part of the section 1031 exchange.

The Attorney allegedly disbursed the $102,989 to the bank account of a third party, Ted Holder, within a year before the filing date, for purposes of the section 1031 tax-free exchange.  That evidence cannot be reconciled with the Attorney's claim in his affidavit that he deducted all of his fees from the $102,989 pre-petition.  At the Hearing, the Attorney testified that because the first two checks were for attorneys' fees, the bank disbursed those two checks from Ted Holder's account back to the Attorney within a few months before the filing date.  He represented that the reason he did not disburse his attorneys' fees directly to himself from his attorney trust account was to make sure he left a "paper trial" for the IRS regarding the section 1031 transaction.  There is no evidence that the money was disbursed back to the Attorney from Ted Holder's account.  The Attorney claimed that he was not aware of the Debtor's bankruptcy filing until late February.

---

[2] Section 1031 of the Internal Revenue Code allows a person to avoid capital gains taxes on the sale of property if such property is exchanged for like-kind property.  26 U.S.C. § 1031.

The bankruptcy court ordered the Attorney to file a supplemental accounting. The supplemental accounting showed that the Attorney deposited the funds he received from the Debtor into a joint account with his wife, instead of his attorney trust fund. No evidence was produced to support the Attorney's claim that he received such funds from Ted Holder's account.

The Attorney collected his $40,000 fee for a number of services he allegedly provided to the Debtor pre-petition and post-petition. Pre-petition, he received a total of $20,000 within a few months before the Debtor filed for bankruptcy relief. The Attorney documented 35.8 hours of work that he performed for the corporation at $200 per hour pre-petition regarding the section 1031 tax-free exchange and other projects. He claimed that he also provided an additional 20 hours of telephone time at $200 per hour pre-petition. In addition, the Attorney charged the Debtor a retainer fee. A portion of the Attorney's retainer fee was earned post-petition but paid pre-petition. The Attorney also collected $20,000 in retainer fees from the proceeds of the Sale for services allegedly performed post-petition. He testified at the Hearing that expenses for travel and investigation to find suitable sites for additional section 1031 projects consumed the $62,987.17 that the Debtor received from the Sale but did not spend on the Attorney's fees.

In a June, 2000 order, the court allowed the Attorney to retain $7,160 in documented attorneys' fees and expenses incurred pre-petition and ordered the Attorney to disgorge to the estate fees of $12,840 received for 20 hours of undocumented telephone time and unearned retainer fees paid within a few months before the filing date. Post-petition fees of $20,000 were ordered disgorged to the estate.

STANDARD OF REVIEW

This Court reviews de novo the bankruptcy court's legal conclusions, and reviews for clear error its findings of fact. Fed. R. Bankr. P. 8013. Schroeder v. Rouse (In re Redding), 247 B.R. 474, 477 (B.A.P. 8th Cir. 2000); Martin v. Cox (In re Martin), 140 F.3d 806, 807 (8th Cir. 1998); Gourley v. Usery (In re Usery), 123 F.3d 1089, 1093 (8th Cir. 1997). A decision regarding whether property is property of the estate is a legal question to be reviewed de novo.

A bankruptcy court's decisions regarding an allowance of attorneys' fees are reviewed for an abuse of discretion. Walton v. LaBarge (In re Clark), 223 F.3d 859, 862 (8th Cir. 2000). An order disgorging attorneys' fees will not be disturbed on appeal absent evidence of an abuse of discretion. Slaton v. Raleigh, 1998 WL 684210 (N.D.I.ll. 1998). An appellate court may only find that the bankruptcy court abused

4

its discretion if the appellate court is convinced that no reasonable person could agree with the bankruptcy court. The Attorney carries the burden of showing that the compensation received was reasonable. Walton, 223 F.3d at 863; Snyder v. Dewoskin (In re Mahendra), 131 F.3d 750, 757 (8 th Cir. 1997).

CONCLUSIONS OF LAW

Jurisdiction to Order Disgorgement of the Attorney's Fees

The Attorney claims that the bankruptcy court improperly asserted jurisdiction over the Attorney under sections 105 and 329 because: (1) the Attorney represented only B&B, not the Debtor; (2) even if Attorney did represent the Debtor, the Attorney's services were not rendered to the Debtor for representing the Debtor in a case under Title 11 or in connection with such a case; and (3) the bankruptcy court could not act sua sponte.

Section 329 of the Bankruptcy Code governs fee arrangements between a debtor and his attorney. 11 U.S.C. § 329. The legislature's goal in enacting section 329 was to prevent overreaching by a debtor's attorney. Section 329 states:

(a)     Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of filing of the petition . . .

(b)     If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment to the extent excessive, to -

(1)     the estate, if the property transferred -

(A)     would have been property of the estate.

11 U.S.C. § 329.

There is ample evidence to support the bankruptcy court's finding that the Attorney represented the Debtor. The Sale of the real property owned in Illinois by the Debtor was the source of the funds paid to the Attorney for his fees. The closing documents from the section 1031 transaction show that the Debtor

conveyed title to the property to the buyer. The Debtor executed the warranty deed for the Sale. The Subordinate Addendum to the 1031 Exchange of Property Escrow Agreement identifies the individual Debtor as a party to the transaction. In the Attorney's fee statement, the Attorney identifies the Debtor as a party.

The bankruptcy court correctly found that the Attorney's services were rendered to the Debtor for representing the Debtor in a Title 11 case or in connection with such a case as required under section 329. For a court to find that services are "in contemplation" of bankruptcy, such court must find that the services are "influenced by, and a direct result of, the imminence of the Debtor's filing." In the Matter of Swartout, 20 B.R. 102, 106 (Bankr. S.D. Ohio 1982). The services should have more than a casual relationship to the bankruptcy proceeding. Id. Section 329 cases interpret that provision of the Bankruptcy Code broadly. Wootton v. Ravkind (In re Dixon), 143 B.R. 671, 677 (Bankr. N.D. Tex. 1992). Courts apply a subjective test, looking to whether the debtor was influenced by the possibility or imminence of a bankruptcy proceeding in making the transfer, to determine whether attorneys' fees payments were made "in contemplation" of bankruptcy. Id. at 676, n.3; *citing* Conrad, Rubin & lesser v. Pender, 289 U.S. 472, 53 (1933).

By interpreting section 329 broadly, we hold that the Debtor transferred the funds to the Attorney "in contemplation" of bankruptcy. The bankruptcy court found that the section 1031 transaction was a sham designed to remove property from the estate. Such finding was not clearly erroneous. The evidence shows that the Attorney acted evasively and lacked candor about how he received his fees. The transaction consisted of a transfer to a third-party, a section 1031 exchange, deposit of the money into the Attorney's personal account, and a lack of evidence demonstrating that the Attorney received the money from a third-party. Although he claimed to have expertise in business, the Attorney prepared a transaction that made no business sense. The finding that the Debtor's section 1031 transaction was a sham to transfer property that would become part of the estate upon filing demonstrates that the Debtor was subjectively influenced by the imminency of his bankruptcy filing when he transferred funds to the Attorney. If the Debtor was not contemplating his bankruptcy filing, he would have had no need to construct a sham to remove property from the estate.

By ordering disgorgement of the Attorney's fees sua sponte, the bankruptcy court acted appropriately. Section 329 allows the court sua sponte to regulate attorneys and other people who seem to have charged debtors excessive fees. See In re Weatherly, 1993 WL 268546 (Bankr.E.D.Pa. 1993).

Bankruptcy Rule 2017 gives a court the power to review compensation paid by a debtor. Id. Together, the bankruptcy court's power under section 329 coupled with Bankruptcy Rule 2017 allowed the court to act sua sponte.

Order Disgorging Attorney's Fees

The plain language of section 329 provides that there must be a showing that attorneys' fees were excessive before the court can order disgorgement of such fees. Schroeder v. Rouse (In re Redding), 247 B.R. 474, 478 (B.A.P. 8th Cir. 2000). A disgorgement is allowed only to the extent that the fees are excessive. Id. at 479. To determine whether fees are excessive, a court should compare the amount of compensation that the attorney received to the reasonable value of the services rendered. Id. at 478.

According to the Attorney, the bankruptcy court should not have ordered the Attorney to disgorge a portion of his fees. We find that the bankruptcy court acted within its discretion by ordering disgorgement of the money allegedly paid to the Attorney as fees.

The Attorney did not prove that the amount of compensation that he received was consistent with the reasonable value of his services. He failed to prove that his pre-petition services were of a value exceeding $7,160. Without evidence to document that the Attorney spent 20 hours making telephone calls, the Attorney could not meet his burden of proving the reasonableness of his fees for such calls.

The bankruptcy court also correctly determined that the Attorney could not prove that he was entitled to his fees for the work performed post-petition. The Attorney contends that the fees were collected through an earned on receipt retainer. Allegedly, the Attorney received part of the retainer pre-petition and part post-petition, but earned the entire retainer post-petition. As mentioned above, the bankruptcy court did not err by finding that the retainer was a sham. The Attorney did not prove that fees constituting a sham were reasonable.

7

<u>Return of the Disgorged Fees to the Estate</u>

The bankruptcy court properly concluded that the $32,840.00 sum in which the Attorney's fees exceeded the reasonable value of his services should be returned to the estate pursuant to section 329.[3] The Attorney argues that the funds were from a pre-petition property sale, were used to pay pre-petition attorneys' fees for a non-debtor third-party, and were not property of the estate. Further, the Attorney claims that the doctrine of laches and the statute of limitations prevent the court from attempting to recast an existing pre-petition contract as an avoidable preference to create property of the estate.[4]

We recognize that the funds used to pay the Attorney's fees were from the pre-petition Sale. The source of the funds is irrelevant to a determination of whether they were property of the estate in this case. As discussed above, we disagree with the Attorney's claim that the funds were used to pay attorneys' fees for a non-debtor party.

We hold that the bankruptcy court did not improperly create property of the estate because the funds earned from the Sale and later used to pay the Attorney's fees were property of the estate. Specifically, if the $20,000 had not been paid to the Attorney pre-petition, it would have been property of the estate. Likewise, the $20,000 paid to the Attorney post-petition was property of the estate. Pursuant to section 541 of the Bankruptcy Code, property of the estate consists of "all legal or equitable

---

[3]Because the funds used to pay the Attorney both pre-petition and post-petition were property of the estate, James C. Luker, the trustee, could have brought 11 U.S.C. §§ 549 & 550 claims. <u>Schroeder v. Rouse (In re Redding)</u>, 247 B.R. 474, 477 (B.A.P. 8th Cir. 2000). Pursuant to Fed. R. Bankr. P. 7001(1), the trustee must file an adversary proceeding in order to do so. <u>Id</u>.

[4]The Attorney argues further that he held a retainer that was either a classic retainer or an advance payment retainer, but not a security retainer. A classic retainer or an advance payment retainer could not be property of the estate. A security retainer could be property of the estate. <u>See</u> <u>Meeks v. Perroni (In re Armstrong)</u>, 234 B.R. 899, 903 (Bankr. E.D. Ark. 1999). Because the bankruptcy court's finding that the retainer, whether classic, advance, or security, was nothing more than a sham was not clearly erroneous as discussed above, the Attorney's argument regarding the type of retainer is irrelevant.

interests of the debtor in the property as of the commencement of the case" including "any interest in the property that the trustee recovers under section 329." 11 U.S.C. §§ 541 (a)(1) & (3). The proceeds from the Sale would have been property of the estate on the date of filing because of the way in which section 1031 tax-free exchanges work. During the section 1031 tax-free exchange, the Debtor retained an interest in the money used to pay the Attorney's fees, even though the money was transferred to the Attorney and then to Ted Holder. At any time, the Debtor could have appointed the money for himself or used it for his own benefit.

## CONCLUSION

The bankruptcy court had jurisdiction to order disgorgement of the Attorney's fees. When the bankruptcy court ordered the Attorney to disgorge a portion of his fees, the court acted within its discretion. The return of the disgorged fees to the estate was appropriate as a matter of law. For the foregoing reasons, the judgment of the bankruptcy court is affirmed.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE EIGHTH CIRCUIT

9