In re LLOYD, CARR & CO., a partnership of which Alan H. Abrams, a/k/a Alan H. Abrahams and James A. Carr, and Charles P. Lemieux, III are general partners with offices at 84 State Street, Boston, Massachusetts 02109 and various other locations in the United States, Alleged Bankrupt.

In re Alan H. ABRAMS, a/k/a Alan H. Abrahams and James A. Carr, an individual having a last known place of residence at 201 Ocean Avenue, Marblehead, Massachusetts 01945, Alleged Bankrupt.

Bankruptcy Nos. 78–204–T, 78–209–T and 78–208–T.

United States District Court,
D. Massachusetts.

Dec. 7, 1979.

Harvey Brower, Lawrence, Mass., and Margaret M. Melican, Somerville, Mass., for debtors.

Henry Friedman, Boston, Mass., for petitioning creditors in No. 78–0204–T.

Robert E. McLaughlin, Sandra Steele, Gilman, McLaughlin & Hanrahan and M. Arthur Gordon, Boston, Mass., for receiver in No. 74–208–T.

Victor Bass, Charles W. Morse, Jr., Sullivan & Worcester, Boston, Mass., for petitioning creditors in Nos. 78–0208–T and 78–0209–T.

Alin R. Hoffman, Lynch, Brewer, Hoffman & Sands, Boston, Mass., for Henry E. Lessard.

Martin S. Rosenblatt, San Francisco, Cal., for Newspaper Printing Co.

Andrej Thomas Starkis, Milford, Mass., Edward Z. Pollock, Boston, Mass., for William Graham and Jasper Tilden.

Victor W. Dahar, Manchester, N.H., for Dunfey Family Corp.

Earl L. Miller, Stavisky & Greeley, Boston, Mass., for IBM.

Vigilante, Kimmel & Fiore, Charles A. Fiore, Norwalk, Conn., for Rolf Thorstenson.

Terry Philip Segal, and Sumner Darman, Silverman & Kudisch, Boston, Mass., John B. Manning, Worcester, Mass., for Alan H. Abrahams in No. 74–208–T.

Christopher P. Sullivan, Boston, Mass., for Irving Bleistern.

Charles Morse, Jr., Sullivan & Worcester, Boston, Mass., for New England Tel. and Tel. Co., Ill. Bell Tel. Co. and Southern New Tel. Co., The Bell Telephone Co. of Penn., Michigan Bell Telephone Co., and The Pacific Telephone and Telegraph Co.

M. Carr Ferguson, Asst. Atty. Gen., Mary M. Brennan, Asst. Atty., Jerome Fink, Gerald C. Miller, Dept. of Justice, Washington, D.C., for Dept. of Justice in No. 74–208–T.

Kevin P. Curry, Zyfers & Curry, Boston, Mass., for James A. Bryant.

Bernard A. Riemer and Pollack, Cohn, Riemer & Pollack, Boston, Mass., for Chicago Tribune, Cruener Office Supply, Palmer House, Pitney Bowes, The Conrad Hilton, Luce Press Clippings, Shield Publ., Co. Inc., Manpower Inc. of Stanford, and Automation Papers Co.

Gerald J. Zyfers, Zyfers & Curry, Boston, Mass., for James O'Brien.

## OPINION

TAURO, District Judge.

Counsel for the Receiver in this complicated bankruptcy proceeding has applied to this court for an interim fee allowance covering services rendered from January 23, 1978, through June 30, 1979. The detailed fee application asks this court to find that the value of these services is $350,000. Recognizing that an interim fee award should be less than the total compensation earned to the date of the award, *see In the Matter of Multiponics, Inc.*, 551 F.2d 1049, 1050 (6th Cir. 1977), *In re McGann Mfg. Co., Inc.*, 188 F.2d 110 (3d Cir. 1951), the Receiver's counsel has, in its Suggested Findings of Fact, asked for an interim award of $275,000. The United States and counsel for a group of telephone companies (comprising a subset of the petitioning creditors) have opposed this request for fees as excessive and unreasonable.

In assessing bankruptcy fee applications, this court "has been accorded broad discretion . . . , *Dickinson Industrial Site v. Cowan*, 309 U.S. 382, 60 S.Ct. 595, 84 L.Ed. 819 (1940), and its decision is subject to interference only on a showing of an abuse of discretion or the application of incorrect legal principles." *In the Matter of Arlan's Dept. Stores*, 462 F.Supp. 1255, 1260 (S.D.N. Y.1978).

A proper understanding of the background of this proceeding is essential to evaluating the fee application. Unfortunately, such an understanding is not easy to convey, given the complex and sometimes bizarre nature of this case. Receiver's counsel has undergone several legal adventures, often with little more guidance than that of the experienced explorer's feel for unchartered land. Thanks primarily to his experience, much progress has been made in this case despite a succession of obstacles.

### I.

This case was launched in a blaze of publicity and legal activity concerning the

affairs of Lloyd, Carr & Company, a Boston-based commodity brokers firm. Allegations of fraud against the company and its principals were widely reported by news media as a succession of civil and criminal actions were filed in this district, the Southern District of New York and the Eastern District of Michigan.

On January 19, 1978, I appointed Walter H. McLaughlin, Sr., former Chief Justice of the Massachusetts Superior Court, as an equity receiver in order to seize and control the assets of Lloyd, Carr pending resolution of the manifold legal actions against it and its principals. On February 1, 1978, I appointed Judge McLaughlin as Bankruptcy Receiver, upon the filing of creditors' petitions against the company and Alan Abrahams, its major figure. On February 17, 1978, I appointed the applicant as Receiver's counsel.

Judge McLaughlin took on a heavy assignment when he accepted this court's appointment. The affairs of Lloyd, Carr were in shambles. As time passed, it became apparent that there were several dimensions to the shambles. First, the principal behind Lloyd, Carr—Alan Abrahams—operated under at least two aliases. Second, Abrahams had conducted business through at least seven business entities besides Lloyd, Carr & Co. and through a variety of straw trusts and alias bank accounts. Third, the company maintained, in addition to its Boston headquarters, eleven affiliated offices throughout the country, and was in the process of opening two others. Fourth, Abrahams had dispersed substantial funds of Lloyd, Carr to a number of domestic law firms and to foreign bank accounts. Fifth, the Receiver had to contend with a host of related actions, including proceedings in various federal and state courts, Bermuda, and the Commodities Futures Trading Commission. Sixth, the effort to gain possession of the dispersed assets necessitated novel and intricate negotiations and proceedings in Bermuda and Switzerland. Finally, the nature of Lloyd, Carr's business— the marketing of commodity options—created immediate administrative problems concerning how to deal with unexpired options, as well as long-term legal problems concerning the standing and rights of those in whose name such options had been acquired by Lloyd, Carr.

As a result of what all parties concede to be high professional competence and zeal, the Receiver and his counsel have successfully amassed, as of June 30, 1979, assets totalling $4,739,424 in value. These assets have generated an additional $307,146 in interest for the benefit of the estate. Furthermore, claims for another $1,500,000 are presently being prosecuted by the Receiver. That this demonstrates an extremely successful marshalling of assets is conceded by all parties. Indeed, no other conclusion is possible.

## II.

Success, of course, is just one factor in determining whether an interim fee request should be granted. Such applications must be scrutinized carefully with an eye to determining their reasonableness. The guiding standard in this determination has traditionally been the principle of economy. But, the economy should be genuine. It would be an exercise in false economy to fail to make fee awards that recognize the ability of counsel, the challenges faced, and the results obtained. "[A]side from the principle of economy, the *results achieved* constitute the factor of greatest determinative weight." 1 Collier Bankruptcy Manual section 62.06[4] (2d edition 1954). *See also Jacobowitz v. Double Seven Corp.*, 378 F.2d 405, 408 (9th Cir. 1967). There is a need to provide realistic compensation as an incentive to the best of the bar to serve the bankruptcy court. *See Arlan's Dept. Stores, supra* at 1261; *In re Farrington Mfg. Co.*, 540 F.2d 653 (4th Cir. 1976). This is particularly true in cases such as this involving sensitive, multifaceted issues. And so a determination of reasonableness requires an examination of all surrounding circumstances. A helpful litany of factors to be considered is set forth in *In the Matter of First Colonial Corp. of America*, 544 F.2d 1291, 1298–99 (5th Cir.), *cert. denied,*

431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977): [1]

> (1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; (12) Awards in similar cases.

*First Colonial, supra* at 1299.

 These factors will be considered seriatim as they relate to the fee application here.

(1). *The Time and Labor Required.* The fee application provides extensive and uncontested detail on the time and labor expended, both lawyer and non-lawyer.[2]

Of the more than 3800 hours claimed, 200 of partners' labor are undocumented. This court accepts counsel's representation that the 200 hours were expended. From my own experience in the practice of law, I understand that it is sometimes difficult to account precisely for each conference and phone call made by a partner, let alone the time spent pondering case problems during non-office hours. While I am mindful of the strict accounting requirements imposed on fee applications in bankruptcy cases, *see In re Meade Land & Development Co.,* 527 F.2d 280, 283–84 (5th Cir. 1975), I find that the detailed submission here, together with counsel's representations as to the 200 hours, meets those requirements. *See id.; Matter of Interstate Stores, Inc.,* 437 F.Supp. 14, 17 (S.D.N.Y.1977).

(2). *The Novelty and Difficulty of the Questions.* The factual background sketched above presents a synopsis of the enormous difficulties confronting Judge McLaughlin and counsel when they took on this case. An example is the litigation, before three levels of the Bermuda court system, which demanded a quick and thorough grasp of several distinct bodies of law not ordinarily encountered in even the most sophisticated or specialized Boston practice. Another has been the intricate and important issues of first impression in the transfer of funds from Swiss bank accounts to the estate. This included the first application of a recent Swiss-American treaty to the transfer of funds. Novel and difficult legal issues concerning the rights of various commodity options holders permeate this case.

(3). *The Skill Requisite to Perform the Legal Service Properly.* As stated before, even the trade creditors who oppose this fee application concede to the Receiver's counsel "a high degree of professional competence and zeal." Petitioning Creditors' Proposed Findings of Fact at 3. This court concurs with that assessment.

(4). *The Preclusion of Other Employment.* Though no evidence has been presented on this issue, it is fair to infer that acceptance of this case has displaced other potential work for the applicant and has taxed its capacity to handle the work of its established clients. Counsels' personnel resources are not unlimited, and there are only so many hours in the day.

(5). *The Customary Fee.* I have examined the affidavits and exhibits prepared by the applicant and opposing counsel with respect to comparable fees in other bankruptcy cases in this district. I find that the proffered comparisons are insufficiently detailed and not really helpful. It is difficult for a judge to appreciate fully all that

---

**1.** The Fifth Circuit had previously devised and explained these factors in the context of an award of attorneys' fees in a civil rights case. *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974). For the purpose of this opinion, the *Johnson* explana-

tions, modified for the bankruptcy context, will be employed.

**2.** The use of non-attorneys is fully consonant with the economical principle of the Bankruptcy Act. *Arlan's Dept. Stores, supra* at 1267.

might have transpired in a case handled by a colleague. Basically, fee applications should be decided on the facts of the particular case, and not controlled by another judge's determination in another case. In any event, I find that this proceeding differs substantially from the cases described by opposing counsel in terms of geographical and jurisdictional issues, the attendant pressures of heightened public interest, the complications posed by the numerous court actions, and the other factors mentioned in the factual background, *supra.* To the extent that the proffered prior awards provide ballpark figures, this court finds that the award requested here is perfectly consistent with this evidence of customary fees.[3]

(6). *Contingent or Fixed Fee.* This is not a pertinent issue in deciding this fee application. The court finds, however, that $350,-000 would not be an unreasonable fee for a client to pay to obtain an estate of approximately $5,000,000, particularly under the circumstances of this case.

(7). *Time Limitations.* The applicant was forced to move very quickly to obtain restraining orders and injunctions in order to create and protect the estate. He was on the front lines in a number of jurisdictions in this country, in Switzerland and Bermuda. Circumstances required that he be swift and sure-footed. He was both.

(8). *Amount Involved and Results Obtained.* I refer to my previous findings. The present value of the estate is the direct result of the efforts of the Receiver and his counsel.

(9). *Experience, Reputation and Ability of the Attorneys.* Even while conceding the high level of skill demonstrated by the applicant, creditors' counsel has attempted to score points by noting the relative inexperience of two of the applicant's attorneys. First, this court agrees with the Fifth Circuit, whose standard is being employed in evaluating this application, that "[i]f a young attorney demonstrates the skill and

ability, he should not be penalized for only recently being admitted to the bar." *Johnson, supra* at 719. Second, I reemphasize the agreement of all parties as to the skill displayed by the applicant in this case. The court therefore finds that the paramount consideration at issue here—the overall skill of the applicant—has been of the highest caliber.

(10). *The "Undesirability" of the Case;* (11). *The Professional Relationship with the Client.* Neither of these factors cuts either way on the facts of this fee application. The court, therefore, does not consider either to be relevant to its determination of this application.

(12). *Awards in Similar Cases.* The court refers to the discussion under "(6). *The Customary Fee.*"

### III.

In addition to the *First Colonial* criteria, another aspect of this case merits consideration in the determination of an appropriate fee award. It is relevant to point out that the creditors' counsel opposing this fee application has not been joined in opposition by any co-counsel. Indeed, all co-counsel have disassociated themselves from Mr. Morse's opposition. *See In re Brooks & Woodington, Inc.,* 505 F.2d 794, 799 (7th Cir. 1974).

### IV.

Having fully considered and evaluated the criteria described above, on the basis of a hearing, the filed reports of the Receiver, the memoranda and documents submitted by the parties, I find the value of the services rendered to the estate by the applicant through June 30, 1979 to be $350,000. With respect to an actual interim fee allowance, I note that the applicant has worked over twenty months without compensation, including four months since the last date for which compensation is sought. I further note that extensive and involved proceed-

---

**3.** The court further notes that the creditors' counsel opposing this fee application has estimated, in a letter to his clients, that the proba-

ble range of fees for the Receiver, his counsel, and the accountants would be from $200,000 to $800,000. Affidavit of Robert McLaughlin.

ings remain before final adjudication of this case. The court finds that a fair and reasonable interim fee award to be in the amount of $275,000, together with the documented and uncontested amount of expenses incurred by counsel of $4,343.64.

An order will issue.