In re Lloyd A. SMITH and Deborah L. Smith a/k/a Deborah Hacker, Debtors.

Bankruptcy No. 282–00259.

United States Bankruptcy Court, C.D. Illinois.

June 13, 1984.

Balbach, Fehr & Lindley, Urbana, Ill., for debtors.

John E. Maloney, Urbana, Ill., for Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

LARRY LESSEN, Bankruptcy Judge.

This matter comes before the court on the Trustee's Petition for Examination of Attorney's Fees. The issue in this matter is whether debtors' attorneys' fees are reasonable within the meaning of Sections 329 and 330 of the Bankruptcy Code.

### FINDINGS OF FACT

1. Debtors, Lloyd and Deborah Smith, filed their voluntary joint petition in bankruptcy pursuant to Chapter 7 of the Bankruptcy Code on April 12, 1982. Attached to Debtors' bankruptcy petition were their bankruptcy schedules. The schedules listed a total of twelve creditors, including one priority creditor, six secured creditors, two unsecured creditors, and three creditors with contingent or unliquidated claims. Debtors operated a farm. They owned one parcel of real estate and leased four parcels of real estate. They also owned some livestock. Debtors' total liabilities amounted to $616,967.59 and they valued their total assets at $321,139.30.

2. Four creditors filed claims against Debtors' estate, and one creditor filed an amended claim. Two adversary complaints were filed in the instant case. Neither adversary complaint involved the Debtors.

3. Debtors retained the law firm of Balbach and Fehr, P.C. to represent them in this case. Attorneys Stanley Balbach, S. Byron Balbach, and E. Thomas Fehr performed work; law clerks also performed work. E. Thomas Fehr filed a Disclosure of Attorneys Fees pursuant to Rule 219(b) which indicated that Debtors initially paid to the law firm $11,001.88, and Debtors agreed to pay an additional $100.00 per hour for "extraordinary" services. On May 5, 1984, Debtors' attorneys submitted a statement of attorneys' fees and expenses which indicated that Debtors' legal fees were calculated at $100.00 per hour for attorneys' time and $35.00 per hour for law clerk time, and as of May 1, 1982, their fees amounted to $11,468.00. Through the same period, Debtors' attorneys incurred expenses of $1,128.00. The total bill through May 1, 1982, was $12,596.00. Debtors' attorneys subsequently re-examined their books and discovered they failed to bill Debtors $497.50 for time prior to May 1, 1982. Debtors' attorneys also expended 13.5 hours of attorneys' time and $2.00 in expenses, amounting to $1,352.00, from May 1, 1982 to June 1, 1982. Debtors' total bill for legal fees, therefore, was $14,445.50.

4. Debtors' attorneys submitted detailed records of the amount and purpose of all the time expended on Debtors' case. Some of the time expended was duplicative or excessive. For instance:

a. February 24, 1982, Stanley Balbach (SB) and S. Byron Balbach (BB) both expended 2.0 hours in a conference with Debtors.

b. February 27, 1982, SB expended 1.0 hour and BB expended .3 in the same conference.

c. March 1, 1982, SB expended 6.0 hours and BB expended 8.0 hours in the same trip to Potomac and in the same conferences.

d. March 2, 1982, SB expended 2.5 hours and BB expended 3.0 hours on the same telephone conference calls.

e. March 3, 1982, both SB and BB expended 2.5 hours on duplicate conferences, and a portion of BB's time was for research.

f. March 4, 1982, a law clerk expended 3.2 hours examining an abstract. Over the course of this case law clerks expended 15 hours reviewing abstracts.

g. March 11, 1982, SB expended 7.0 hours and BB expended 6.0 hours in the same meetings and conferences.

h. March 16, 1982, SB expended 1.0 hour and BB 1.5 hours in conferences and reviewing files.

i. March 30, 1982, SB expended 1.5 hours and BB expended 3.0 hours, a portion of which was in the same conference.

j. March 31, 1982, SB expended 5.0 hours and BB expended 1.0 hour, a portion of which was in the same conference call.

k. April 1, 1982, SB expended .3 hour and BB 1.0 hour, a portion of which was in the same conference.

l. April 8, 1982, BB expended 4.5 hours on research, a telephone conference, preparation of schedules, and a conference regarding fees.

m. April 9, 1982, BB expended 4.8 hours in conferences and preparing schedules.

n. April 10, 1982, BB expended 4.5 hours preparing statements and schedules.

o. April 11, 1982, BB expended 2.0 hours preparing statements and schedules.

p. April 12, 1982, E. Thomas Fehr (ETF) expended 1.5 hours reviewing the bankruptcy petition.

q. April 12, 1982, BB expended 6.5 hours to review exemptions, statements, and schedules and to attend a meeting with Judge Lessen. The court notes that this "meeting" was an informal discussion, and the purpose of the visit was to examine bankruptcy forms.

r. April 15, 1982, BB expended 2.3 hours on a petition to abandon property. Also, on April 15, 1982, ETF expended .2 hour reviewing the application to abandon.

s. April 30, 1982, BB expended 1.2 hours and SB expended 1 hour for organizing and reviewing the file and to prepare for a hearing.

t. May 3, 1982, ETF expended 1.2 hours regarding the preparation of the affidavit of attorneys' fees.

u. May 4, 1982, ETF expended .8 hour reviewing and revising the affidavit of attorneys' fees.

v. May 6, 1982, ETF expended .3 hour educating himself on the bankruptcy rules.

w. May 12, 1982, SB expended .3 hour and BB expended 2.0 hours, a portion of which was in the same conference.

5. Debtors paid $100.00 per hour for all of the above attorneys' time. Debtors' attorneys also billed Debtors $55.00 for an *estimated* phone bill and $45.00 for mileage fees for the two trips to Danville. The Trustee has objected to the bill for Debtors' legal services.

6. At the time of their case, the customary rate for attorneys' fees in this area in a bankruptcy case such as Debtors' case was $75.00 per hour. Debtors' case, including the two adversary complaints, was not difficult and presented no unique questions. Debtors' counsel prepared and presented all the bankruptcy requirements and issues competently.

CONCLUSIONS OF LAW

Sections 329 and 330 of the Bankruptcy Code govern the review of compensation paid to debtors' attorneys. Section 329 requires compensation paid to debtors' attorneys to be reasonable. 11 U.S.C. § 329(b). 2 Collier on Bankruptcy, Par. 329.04, at 329–14 (L. King 15 ed. 1979). (hereinafter cited as Collier). In pertinent part, Section 329 states:

(a) Any Attorney representing a debtor in a case under this title or in connection with such a case, ..., shall file with the court a statement of the compensation paid or agreed to be paid, ..., for services rendered or to be rendered in contemplation of and in connection with the case by such attorney and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agree-

ment, or order the return of any such payment, to the extent excessive, to—

(1) the trustee, if the property transferred—(A) would have been property of the estate; or

(2) the entity that made such payment.

Section 329(a) is derived from former Bankruptcy Rule 219(b) while 329(b) is derived from former Bankruptcy Rule 220; both subsections of Section 329 are substantially similar to their predecessor rules. 2 Collier, Par. 329.02, at 329–5. *In re J.J. Bradley & Co., Inc.,* 6 B.R. 529, 533 (Bankr.E.D.N.Y.1980). Section 329 reflects Congress' concern that payments to debtors' attorneys could jeopardize the relief accorded to creditors and could encourage overreaching by debtors' attorneys. 11 U.S.C. § 329 (Legislative History Collier Pamphlet Edition 1983).

■■■ Courts must scrutinize the fees and expenses paid to debtors' attorneys to determine whether the compensation is reasonable. Id. See also 2 Collier, Par. 329.-02, at 329–4, Par. 329.03, at 329–12, Par. 329.04, at 329–13. *In re Yermakov,* 718 F.2d 1465, 1469 n. 8 (9th Cir.1983). To the extent that compensation is unreasonable, the court may order the fee returned to the bankruptcy estate or to the payor. 11 U.S.C. § 329(b).

Section 330 provides the criteria by which courts measure the reasonableness of compensation paid to debtors' attorneys. 2 Collier, Par. 329.04, at 329–14. In pertinent part, Section 330 states:

(a) After notice to any parties in interest ..., and subject to Section 326, 328 and 329 of this title, the court may award ... to the debtor's attorney—

(1) reasonable compensation for actual, necessary, services rendered by such ... attorney, ... and by any para-professional persons employed by such ... attorney, ..., and the value of such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

Except for the rejection of the strict principle of economy of administration, Section 330's criteria for fixing attorneys' fees is identical to the criteria of the former Bankruptcy Act. *In the Matter of Hamilton Hardware Co., Inc.,* 11 B.R. 326, 329 (Bankr.E.D.Mich.1981). 2 Collier, Par. 330–05, at 330–17. Section 330 limits compensation to debtors' attorneys and to other professional persons to a reasonable amount for *actual* services that are *necessary* to the bankruptcy case. 11 U.S.C.A. § 330(a) (emphasis added). *In re Yermakov,* 718 F.2d 1465, 1470 (9th Cir.1983).

■■■ Determining the reasonableness of an attorney's compensation is a difficult task which is not easily reduced to a mathematical formula. *In the Matter of Multiponics Incorporated,* 622 F.2d 731, 735 (5th Cir.1980). *In re Warrior Drilling & Engineering Co., Inc.,* 9 B.R. 841, 847 (Bankr.N.D.Ala.1981), modified, 18 B.R. 684 (N.D.Ala.1981). *In the Matter of Hamilton Hardware Co., Inc.,* 11 B.R. 326, 333 (Bankr.E.D.Mich.1981). The review of attorneys fees and expenses is within the discretion of the court, *Arenson v. Board of Trade of City of Chicago,* 372 F.Supp. 1349, 1351 (N.D.Ill.1974), and the court, on a case-by-case approach, will apply the factors set forth below to arrive at a reasonable allowance. *In the Matter of D.H. Overmyer,* 3 B.R. 678, 686 (Bankr.S.D.N.Y. 1980).

■■■ Reasonable attorneys fees and expenses are measured by the factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). *Johnson* involved attorney compensation under the Civil Rights Act of 1964, 42 U.S.C. Section 2000e–5(k), but its factors apply to bankruptcy cases. *Rose Pass Mines, Inc. v. Howard,* 615 F.2d 1088, 1091 (5th Cir.1980). *Matter of First Colonial Corp. of America,* 544 F.2d 1291, 1299 (5th Cir.1977). *In re Warrior Drilling & Engineering Co., Inc.,* 9 B.R. 841, 848 (Bankr. N.D.Ala.1981). *In re Lloyd, Carr & Co. v. Abrams,* 2 B.R. 714, 717 (Bankr.D.Mass. 1979). *In re Pacific Homes,* 20 B.R. 729, 736–737 (Bankr.C.D.Cal.1982). 2 Collier,

Par. 330.05, at 330–17–18. See also Butenas, Establishing Attorney's Fees Under the New Bankruptcy Code, 87 Comm.L.J. 237, 238 (1982). The factors specified in *Johnson* are:

(1) The time and labor required;

(2) The novelty and difficulty of the questions;

(3) The skill requisite to perform the legal service properly.

(4) The preclusion of other employment by the attorney due to acceptance of case;

(5) The customary fee;

(6) Whether the fee is fixed or contingent;

(7) Time limitations imposed by the client or the circumstances;

(8) The amount involved and the results obtained;

(9) The experience, reputation, and ability of the attorneys;

(10) The "undesirability" of the case;

(11) The nature and length of the professional relationship with the client; and

(12) Awards in similar cases.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 717 to 719.

This court will apply the *Johnson* factors to the instant case.[1]

■ The first *Johnson* factor is the time and labor required. The debtor's attorney must provide to the court a detailed account of all the legal services provided to the debtor, *Rose Pass Mines v. Howard*, 615 F.2d at 1093, but the court, using its own knowledge, experience, and expertise, will independently assess the quality and quantity of the time expended by the attorney. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 717. *Matter of D.H. Overmyer Co., Inc.*, 3 B.R. at 686–687, *In re G.W.C. Financial & Insurance Services, Inc.*, 8 B.R. 122, 125 (Bankr.C.D. Cal.1981).

Courts which have considered *Johnson's* first factor in a bankruptcy context have left no stone uncovered. They have examined the competency of counsel,[2] the necessity of the attorney's services,[3] the amount of duplication of effort and repetitious reviewing,[4] the amount of time co-counsel conferred on the telephone,[5] the details of the billed time, including the number of hours billed by partners, associates, and clerks,[6] and the extensiveness of the debt-

---

1. The United States Court of Appeals for the Seventh Circuit has not considered whether *Johnson's* factors apply to the review of reasonable compensation for debtors' attorneys. The court has approved, however, within the context of reasonable fees for civil rights litigants, the American Bar Association's factors regarding reasonable attorneys fees. These factors, which are virtually identical to the *Johnson* factors, include:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent. American Bar Association Code of Professional Responsibility, Disciplinary Rule 2–106. See also, *Strama v. Peterson*, 689 F.2d 661, 664 (7th Cir.1982). *Bonner v. Coughlin*, 657 F.2d 931, 934 (7th Cir.1981).

2. *In The Matter of Sumthin' Special, Inc.*, 2 B.R. 743, 748 (Bankr.N.D.Ill.1980).

3. Id. *In re G.W.C. Financial & Insurance Services, Inc.*, 8 B.R. at 125.

4. *In re Warrior Drilling & Engineering Co., Inc.*, 9 B.R. at 848. *In Re J.J. Bradley & Co., Inc.*, 6 B.R. at 537.

5. *In re Grady*, Bankr.L.Reptr. (CCH) § 66,891, at 76,882 (S.D.Iowa 1978).

6. Id. *In the Matter of Sumthin' Special, Inc.*, 2 B.R. at 748–9. *In the Matter of D.H. Overmyer, Inc.*, 3 B.R. at 687. *In re Warrior Drilling and Engineering Co., Inc.*, 9 B.R. at 848.

or's case, including the number and difficulty of the executory contracts, claims, and creditors.[7]

In the instant case, Debtors' attorneys repeatedly duplicated their efforts. More than one attorney did work which easily could have been done by one attorney, and on numerous occasions more than one attorney participated in the same meeting or phone call. Every minute of each attorney's time throughout this duplication of effort was billed at $100.00 per hour. The following dates reflect time which the court concludes was duplicative or which could have been more judicially accomplished by one attorney: February 24, 1982, February 27, 1982, March 1, 1982, March 2, 1982, March 3, 1982, March 11, 1982, March 16, 1982, March 29, 1982, March 30, 1982, March 31, 1982, April 1, 1982, April 8, 1982, April 15, 1982, April 30, 1982, and May 12, 1982.

Debtors were billed fifteen (15) hours for law clerks to review an abstract of title. The court concludes that given the nature and location of Debtors' property, this amount of law clerk time is unjustified.

Debtors' attorneys worked competently in this case, but this case was relatively simple. Only four (4) creditors filed claims against Debtor's estate, and one of the creditors filed an amended claim. The Trustee filed two (2) adversary complaints in this case against Debtors' creditors. Neither adversary affected Debtors nor involved intricate or time consuming issues with respect to Debtors. The court concludes that this case presented no novel or exceedingly difficult questions of law or fact to justify the extensive time expended by Debtor's attorneys.

The second factor considered by this court is the novelty and difficulty of the questions presented in Debtors' estate. Important for this factor is whether the bankruptcy case presents intricate or important questions of first impression. *In re Lloyd Carr & Co. v. Abrams*, 2 B.R. at 717. *In re Warrior Drilling and Engi-*

*neering Co., Inc.*, 9 B.R. at 849. As stated above, no intricate or important questions of first impressions were raised in the Debtors' bankruptcy. This case was relatively straight-forward and simple, and the requested fees cannot be explained with this factor.

■ The third factor considered in this case is the skill requisite to perform the necessary legal services properly. This factor requires the judge to use his own expertise as an attorney and as a judge to assess the debtors' attorneys' work product, preparation, and ability. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 718. *In The Matter of First Colonial Corp. of America*, 544 F.2d at 1300. In this case, although Debtors' attorneys expended an inordinate amount of time, they performed adequately and competently. Their work product, preparation, and ability were satisfactory but not exceptional. The compensation requested by Balbach and Fehr, P.C., can not be justified under *Johnson's* third factor. See *In re Warrior Drilling and Engineering Co., Inc.*, 9 B.R. at 849.

Preclusion of other employment by the attorney due to the acceptance of the case is the fourth factor considered by this court. Courts recognize that a bankruptcy case may preclude an attorney from devoting time to other clients, Id. at 849, and in difficult bankruptcy cases, the court may infer preclusion of other employment. *Lloyd, Carr & Co.*, 2 B.R. at 717. In the instant case, however, the facts and issues were relatively simple so as to not raise an inference of preclusion of other employment, and no evidence was presented to indicate that Debtors' attorneys were precluded from pursuing other employment.

■ The fifth factor is the customary fee. The court must consider the usual fee charged by attorneys for similar work within the community. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 718. *In re Yermakov*, 718 F.2d at 1471. Courts which have addressed this factor

---

7. *In re J.J. Bradley & Co., Inc.*, 6 B.R. at 537.

have considered comparable fees in other bankruptcy cases within the district and within the period in question, *In re Lloyd, Carr & Co.*, 2 B.R. at 717, *In re G.W.C. Financial & Insurance Services, Inc.*, 8 B.R. at 125, and the rate normally charged by the debtor's attorney in non-bankruptcy cases. *In re Yermakov*, 718 F.2d at 1471. Although not required, expert testimony may establish the customary fee within the locality. *In re G.W.C. Financial & Insurance Services, Inc.*, 8 B.R. at 125.

In this case, two witnesses testified as to the customary fee within this district. Balbach and Fehr's expert witness was Mr. James W. Evans, a practicing attorney in this district for 20 years, who testified that the customary fee charged by experienced bankruptcy attorneys is $75.00 per hour, but he noted that $100.00 per hour may be charged for certain special matters. He also testified that in a Chapter 7 bankruptcy of the extent and difficulty of this case, the total customary fee for attorney's services should have been between $2,500 and $3,000. The second witness was Mr. Clyde Meachum. Mr. Meachum was a bankruptcy judge in this district for 11 years, and he has practiced law, concentrating extensively in bankruptcy, in this district from 1961 through the present time. He is a recognized bankruptcy expert in this district. Mr. Meachum testified that the customary bankruptcy attorney's fee in this area is from $65.00 to $75.00 per hour. The court concludes that the rate charged Debtors in this case, $100.00 per hour, exceeds the customary rate. The court further concludes that at the time of Debtors' case, the customary fee in this district for a bankruptcy case such as Debtors' case was $75.00 per hour. Although Debtors agreed to pay their attorneys $100.00 per hour, this agreement is not binding on the court as Section 330 of the Bankruptcy Code requires the court to independently determine the reasonableness of Debtors' attorneys fees. *Matter of Hamilton Hardware*, 11 B.R. at 329.

The sixth factor considered by this court is whether the fee was fixed or contingent.

This factor encourages attorneys to accept otherwise undesirable cases and permits them to recover a possible large fee if the case is successful. See *In re Yermakov*, 718 F.2d at 1470. *In re Warrior Drilling and Engineering Co., Inc.*, 9 B.R. at 849. Since Debtors' case was not undesirable, and since Debtors' contract with their attorneys was not contingent, no reward under this factor is appropriate.

The seventh factor is the time limits imposed by the clients or by the circumstances. This factor recognizes that some bankruptcy cases involve emergency or priority work, swift action, daily attention, shortened time schedules, and numerous or complicated adversary proceedings. *In re Lloyd, Carr & Co.*, 2 B.R. at 718. *In re Warrior Drilling and Engineering Co., Inc.*, 9 B.R. at 850. Debtors' case involved none of the above problems. Two adversary proceedings were filed by the trustee. Neither adversary proceeding affected or involved Debtors, and neither proceeding was complicated or involved much work by Debtors' attorneys. Considering the overall difficulty of this case, neither the Debtors nor the circumstances could have imposed significant time limits on Debtors' attorneys.

The amount involved and the results obtained comprise the eighth factor considered in this case. Courts assessing this factor consider the benefit accorded to the bankruptcy estate by the attorneys' services. Matters such as the size and value of the estate are important in this factor. *In re Warrior Drilling and Engineering Co., Inc.*, 9 B.R. at 850. *In re Grady*, Bankr.L. Reptr. (CCH) at 76,883. *In re Quick Release, Inc.*, 6 B.R. 713, 716 (Bankr.D.S.D. 1980). Debtors' case was not complicated and did not result in extraordinary benefits for the Debtors or their creditors. In this case, competent attorneys performed competently in a relatively simple case.

The experience, reputation, and ability of the attorneys is factor number nine. Courts recognize that an experienced attorney normally is entitled to a premium fee, but longevity must be secondary to the

skill exhibited by the attorney. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 719. *In the Matter of D.H. Overmyer*, 3 B.R. at 718. Stanley Balbach is a competent and experienced attorney; S. Byron Balbach is a competent attorney; and, E. Thomas Fehr is a competent and experienced attorney. None of these attorneys, however, were experts in bankruptcy or had extensive experience in bankruptcy. Stanley Balbach admitted that his law firm performed very little work in bankruptcy prior to Debtors' case. The court notes that on one occasion the attorneys' purpose in traveling to Danville was to examine bankruptcy forms. The court concludes that the fee charged to the Debtors is not reflective of Debtors' attorneys' experience, reputation, or ability in the area of bankruptcy law.

Factor number ten, the undesirability of the case, is not important in this matter. No evidence was presented and the court file suggests no information to indicate that this case was undesirable. In fact, the facts indicate that Debtors' case was desirable. See *In re Lloyd, Carr & Co.*, 2 B.R. at 718. Not appropriate to this case is factor number eleven which is the nature and the length of the professional relationship between the attorneys and the client. This factor is not very significant, *In re Warrior Drilling and Engineering Co., Inc.*, 9 B.R. at 850, and no evidence was presented in this case to suggest that it is important or applicable. See *In re Lloyd Carr & Co.*, 2 B.R. at 718.

The twelfth factor considered by this court is awards in similar cases. This factor is virtually identical to factor number five (5), the customary fee, and the court defers to its treatment of that factor.

■ Determining the reasonableness of Debtors' attorneys' fees is a very difficult and delicate task. The court has carefully considered all the evidence, the bankruptcy file, and the twelve *Johnson* factors. The court notes that Debtors' bankruptcy case was relatively simple and that the Balbach and Fehr's expert testified that an hourly rate of $75.00 per hour and a total bill of approximately $3,000.00 was a reasonable fee for this case. The court concludes that Debtors' attorneys fees and expenses in the amount of $14,445.50 is not reasonable. The court will permit Debtors' attorneys to charge Debtors for 60 hours attorneys time at a rate of $75.00 per hour. The court concludes, therefore, that in this case, the reasonable attorneys' fee for services rendered is $4,500.00 plus $1,130.00 in expenses for a total fee of $5,630.00.

IT IS THEREFORE ORDERED THAT Reasonable Attorneys fees and expenses in this case amounts to $5,630.00.

IT IS FURTHER ORDERED THAT Balbach and Fehr, P.C., shall refund the difference between the fee already paid by Debtors and $5,630.00 to the Trustee instanter.