**In re Joseph A. FULLEN, Debtor.**

**Bankruptcy No. 2–87–05060.**

United States Bankruptcy Court, S.D. Ohio, E.D.

June 6, 1988.

James P. Seguin, Eugene J. Topolski, Enz, Jones & Legrand, Columbus, Ohio, for debtor.

Sara J. Daneman, Columbus, Ohio, trustee and attorney for trustee.

Charles M. Caldwell, U.S. Dept. of Justice, Columbus, Ohio, Asst. U.S. Trustee.

## ORDER ON MOTION TO DETERMINE REASONABLE ATTORNEY'S FEES

R. GUY COLE, Jr., Bankruptcy Judge.

This matter is before the Court upon the Motion to Determine Reasonable Attorney's Fees filed by Sara J. Daneman, the duly-appointed trustee ("Trustee") in this Chapter 7 case. A Memorandum in Opposition to Motion to Determine Reasonable Attorney's Fees has been filed by the law firm of Enz, Jones & Legrand (the "Enz firm"), which served as counsel for Joseph A. Fullen ("Debtor", or "Fullen"). James P. Seguin and Eugene J. Topolski, current associates with the Enz firm, and Ross Fuerman, a former associate at the firm, all allegedly rendered services in connection with Debtor's Chapter 7 case.

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding which the Court may hear and determine. 28 U.S.C. § 157(b)(1) and (2)(A). The following opinion shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule ("B.R.") 7052.

The Trustee's motion challenges the reasonableness of the attorney's fee received by the Enz firm in this Chapter 7 case. The Disclosure of Fees filed by Debtor's counsel in accordance with B.R. 2016(b) reflects that the Enz firm received total compensation of $2,500 for its representation of Fullen in his case. The $2,500 was paid in full in advance; and, as of the petition date (November 12, 1987), no further attorney's fees were owing the Enz firm. The Trustee challenges the reasonableness of the attorney's fee received by the Enz firm on the following basis:

> The Petition was filed by an individual whose debts were primarily consumer's debts. The schedules list assets totalling $900.00. One secured creditor is listed in the Petition and, to date, the Trustee has not been served with a Statement of Intent regarding the secured property. Based upon the Schedules and the length of the Meeting of Creditors, it appears to the Trustee that $2,500.00 represents a fee in excess of the reasonable value of compensation for a case of this nature.

Motion at 1–2. The Trustee also asserts that a review of the time records attached to the opposing memorandum filed by the Enz firm reveals that it is impossible to determine the amount of fees and expenses properly attributable to services rendered in connection with the present case as opposed to those fees which are attributable to services rendered in connection with the companion corporate case—*In re Deluxe Graphic Services, Inc.*, Case No. 2–87–03886. The facts established that the Debtor in the case *sub judice* was the sole shareholder of Deluxe Graphic Services, Inc. ("Deluxe Graphic") and had personally guaranteed most, if not all, of that entity's obligations.

In response to the Trustee's Motion, Debtor's counsel argue that this is not a "garden variety Chapter 7 [case]." Hearing Transcript ("Transcript") at 5. This argument is succinctly set forth in their opposing memorandum:

> At the time of filing the Debtor's petition under Chapter 7, the Debtor's financial position was extremely complicated. The Debtor was named in some capacity as a Defendant in 26 separate cases in both Municipal and Common Pleas Courts in the State of Ohio. In addition to this, the Debtor had personally guaranteed loans with the Ohio State Bank in the amount of $484,000.00 representing loans to Deluxe Graphic Services, Inc. of which the Debtor was 100 percent owner. Deluxe Graphic Services, Inc. is also in a Chapter 7 Bankruptcy at this time. As shown on the Petition, the Debtor had obligations to 27 other creditors for the operation of Deluxe Graphic Services prior to its incorporation.
>
> The Debtor also listed as creditors the City of Westerville, State of Ohio and the Internal Revenue Service for taxes in excess of $123,000.00.
>
> All of these items would more than justify the compensation requested by the attorney in this matter.

Opposing Memorandum at 1.

The matter at bar is governed by § 329 of the Bankruptcy Code and by B.R. 2017(a), which provides as follows:

**§ 329. Debtor's transactions with attorneys.**

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of and in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the trustee, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11 or 13 of this title; or

(2) the entity that made such payment.

**Rule 2017. Examination of Debtor's Transactions With His Attorney.**

**(a) Payment or Transfer to Attorney Before Commencement of Case.** On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor, to an attorney for services rendered or to be rendered is excessive.

The policy underlying the enactment of § 329(b) was aptly described by Judge Brody in *Matter of Olen,* 15 B.R. 750 (Bankr.E. D.Mich.1981), wherein the court stated:

Section 329(b), derived from section 60d of the Bankruptcy Act and Bankruptcy Rule 220(a), provides that the court may examine into [sic] the reasonableness of compensation paid by a debt- or to an attorney for services rendered or to be rendered in contemplation of filing a bankruptcy proceeding and may order the return of any part of that payment to the extent it is excessive. "It matters very little to a bankrupt whether his attorney fee is large or small, since it will be paid out of the assets which, in any event, would normally be consumed in distribution." Committee on the Judiciary, House of Representatives, Report on H.R. 2833 (An Act to Amend Subdivision d of Section 60 of the Bankruptcy Act). H.R.Rep. No. 88–99, 88th Cong., 1st Sess., *reprinted in U.S.Code Cong. and Admin.News* 88th Cong., 1st Sess. 638 (1963). In this context, the need for judicial scrutiny of legal fees paid to an attorney for a debtor contemplating bankruptcy, becomes self-evident.

15 B.R. at 751–52 (citations omitted). *See also, In re Smith,* 48 B.R. 375, 378 (Bankr. C.D.Ill.1984) ("Section 329 reflects Congress' concern that payments to debtors' attorneys could jeopardize the relief accorded to creditors and could encourage overreaching by debtors' attorneys."); *In re Whitman,* 51 B.R. 502, 506 (Bankr.D.Mass. 1985) (strict scrutiny of the compensation of debtors' counsel is warranted due to "the temptation of a failing debtor to deal too liberally with his property in employing counsel" and to avoid the potential for "evasion of creditor protection provisions of bankruptcy laws" and "overreaching by the debtor's attorney").

In determining whether the fees received by the Enz firm in the present case were excessive, the Court is guided by the reasonableness standard set forth in § 330 of the Code. *In re Smith,* 48 B.R. at 378; *In re Pacific Exp., Inc.,* 56 B.R. 859, 862 (Bankr.E.D.Cal.1985). Section 330 provides in relevant part as follows:

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328 and 329 of this title, the Court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

The courts have identified eight factors typically utilized as relevant to an inquiry regarding the reasonableness of compensation for services rendered in connection with a bankruptcy case:

(i) the amount of work done;

(ii) the difficulties or intricacies of the problem presented;

(iii) the skill required and experience of counsel in similar cases;

(iv) the results accomplished;

(v) the amount involved in connection with the services rendered;

(vi) the size of the estate;

(vii) the length of time consumed; and

(viii) the contingency or certainty of compensation.

*See, Cle–Ware Industries, Inc. v. Sokolsky,* 493 F.2d 863 (6th Cir.1974); *In re City Planners & Developers, Inc.,* 5 B.R. 217 (D.Puerto Rico 1980). The burden of proof in all fee matters is on the applicant. *In re Liberal Market, Inc.,* 24 B.R. 653, 657 (Bankr.S.D.Ohio 1982). The threshold question in determining the allowability of fees should be whether the alleged services were actually provided and necessary. *Id.* at 658.

On the record made at hearing, the Court is compelled to conclude that the Enz firm has utterly failed to meet its burden of proving that the alleged services were, indeed, actually provided and necessary. The testimony of Seguin and Topolski provided the Court with virtually no information on the nature or extent of the services provided by the Enz firm. Neither could describe, in any detail, the services which the Enz firm rendered. They were also unable to distinguish between those services which were provided in connection with Fullen's individual bankruptcy case and those services which were related to the corporate bankruptcy (*i.e.,* the *Deluxe Graphic* case). In fact, the record of testimony was so replete with responses such as "I don't know" or "I cannot recall" that the Court was reminded of much of the testimony at the recent Iran–Contra Senate hearings, an unexpected occurrence in a proceeding where counsel is supposedly supporting the reasonableness of the fees in question. The following excerpt from the hearing transcript is illustrative of the type of supporting testimony offered by Debtor's counsel:

Daneman: Do you know how much time you have spent on this case from the date of filing the petition and schedules until conclusion of the meeting of creditors?

Seguin: No.

Daneman: Have you spent any time on the case?

Seguin: Certainly.

Daneman: But you have no idea how much time?

Seguin: No.

Daneman: Could be one hour?

Seguin: I don't know.

Daneman: Going back to Exhibit A, on September 16, 1987, there was an entry for a telephone call with a client. Did you perform that service?

Seguin: No. I don't know, I doubt it.

Daneman: On September 17, 1987 there is another telephone call with a client. Did you perform that service?

Seguin: I don't know.

Daneman: On September 21, 1987, complete petition. Did you perform that service?

Seguin: No.

Daneman: On September 21, 1987, telephone call with client. Did you perform that service?

Seguin: I don't know.

Daneman: On September 21, 1987, review copies of judgment. Did you perform that service?

Seguin: I don't know.

Daneman: Did you perform the service on September 21, 1987, review letter to creditors?

Seguin: I don't know.

Daneman: Did you perform the service that is listed under September 22, 1987, telephone call to the client regarding the bankruptcy credit card?

Seguin: I don't know.

Daneman: On March 11, 1988, did you perform this service, research lien, priority IRS?

Seguin: I know I talked with Mr. Topolski about it.

Daneman: And the service that was rendered that was in connection with the corporate Chapter 7, was that not?

Seguin: Well, if this is on Mr. Fullen's bill, it was probably performed for his bankruptcy.

Transcript at 10–12.

. . . .

Daneman: On December 9, 1987, did you perform those services?

Topolski: I believe so. As far as what took place, I can't recall. I can't say for sure.

Daneman: If you didn't, who would have?

Topolski: There were several individuals in the firm that had done different things on this particular matter. Probably this is one of them.

Daneman: You listed there was a letter to Columbus S.O.F. regarding statements. Do you know what that was?

Topolski: No, I don't offhand.

Daneman: Do you know who Columbus S.O.F. is?

Topolski: I can't remember, no.

Daneman: Could they be a creditor?

Topolski: Can't really say for sure.

Daneman: Are you aware they are not listed in the petition as a creditor?

Topolski: I don't have the petition to refer to.

Daneman: December 10, 1987, telephone call, client regarding preparation 1986 tax return. Did you perform that service?

Topolski: Not quite sure, but possibly, yes.

Transcript at 29–30.

As the foregoing passages from the record reflect, the testimony provided by Seguin and Topolski clearly does not establish that the $2,500 in counsel fees paid by the Debtor constitutes reasonable compensation for "actual, necessary services" rendered by the Enz firm in connection with this Chapter 7 case.

■ The time entries attached to the opposing memorandum filed by the Enz firm are equally unilluminating. Bankruptcy courts in this district have stated repeatedly the need for adequate record-keeping, as articulated by the court in *In re Baldwin United Corp.*, 45 B.R. 381, 382 (Bankr.S.D. Ohio 1984):

... [A] brief description of the work performed is essential for this Court's valuation of fees. The time records which merely note that a telephone call took place or that a conference was held will be deemed insufficient. At a minimum, time entries for conferences and telephone calls should identify who was spoken to and specify what was discussed. If research was performed, a description of the research should be given. Time entries for drafting documents should specify the document involved.

The time entries submitted by Debtor's counsel, which did not constitute a final record of the time expended but, instead, were described as a billing "Preview Statement," were not sufficiently detailed to describe adequately the services rendered. In fact, the inadequate time entries were of little or no benefit to Seguin and Topolski, not to mention the Court, in their attempted explanation of the legal services which had been rendered by the Enz firm. The Enz firm's time records were comprised mainly of sparse entries such as "Telephone call client," "Meeting with client" and "Preparation of Letter." These terse entries simply lack the necessary detail to

permit the Court to pass upon the reasonableness or necessity of the alleged services. *See, In re Four Star Terminals, Inc.,* 42 B.R. 419, 426–27 (Bankr.D.Alaska 1984); *In re Baldwin United Corp.,* 45 B.R. at 382; *In re Pettibone Corp.,* 74 B.R. 293, 301–02 (Bankr.N.D.Ill.1987).

Finally, no evidence was presented as to the skill and experience of the attorneys who provided services to the estate. Topolski had a vague recollection of performing previous bankruptcy-related legal services for clients, but he could not recall the number or type of bankruptcy matters which he had handled in the past. No indication was given regarding the level of skill or experience in the bankruptcy practice area possessed by Seguin or Fuerman. In short, the response to the Trustee's challenge of the $2,500 fee paid by Debtor made by the Enz firm at hearing clearly constituted the most poorly supported fee request that this Court has had occasion to consider.

Notwithstanding the poor, almost non-existent, support for the $2,500 fee charged the Debtor, it is apparent that the Enz firm rendered legal services and the Debtor did eventually obtain a discharge pursuant to 11 U.S.C. § 727. A petition and schedules were prepared and filed, and a member of the Enz firm represented the Debtor at the first meeting of creditors, which was held in accordance with 11 U.S.C. §§ 341 and 343. Based upon its experience in reviewing fees charged by counsel in Chapter 7 cases in this community, the Court finds that a total fee of $750 would be reasonable for a case of this size and complexity. It is entirely possible that the reasonable compensation for services actually and necessarily rendered exceeds the $750 amount awarded, however, the Enz firm was either unable or unwilling to provide even minimal support for an award of $750, not to mention a higher amount.

Based upon the foregoing, the Court hereby ORDERS that Enz, Jones & Legrand refund *instanter* to the Trustee the sum of $1,750, the difference between the $2,500 fee paid by Debtor and $750, which is hereby allowed as the reasonable value of the services rendered.

IT IS SO ORDERED.